No. 25-5357

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MIRANDA STOVALL,

*Plaintiff-Appellant*,

v.

JEFFERSON COUNTY, KENTUCKY BOARD OF EDUCATION, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Kentucky, Louisville Division
(No. 3:24-cv-0336, Hon. Rebecca Grady Jennings)

**BRIEF OF *AMICI CURIAE* AMERICANS FOR PROSPERITY
FOUNDATION, FOIA ADVISOR, DEFENSE OF FREEDOM INSTITUTE
FOR POLICY STUDIES, GOLDWATER INSTITUTE, FREEDOM OF
THE PRESS FOUNDATION, DEFENDING EDUCATION, KENTUCKY
OPEN GOVERNMENT COALITION, MACKINAC CENTER FOR
PUBLIC POLICY, WISCONSIN INSTITUTE FOR LAW & LIBERTY,
ALLIANCE DEFENDING FREEDOM, NATIONAL TAXPAYERS UNION
FOUNDATION, AND SUTHERLAND INSTITUTE IN SUPPORT OF
APPELLANT MIRANDA STOVALL AND REVERSAL**

Ryan P. Mulvey
   *Counsel of Record*
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203
(571) 444-2841
rmulvey@afphq.org

*Counsel for* Amici Curiae

Dated: June 18, 2025

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: No. 25-5357            Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Americans for Prosperity Foundation
                               *Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome?  If yes, list the identity of such corporation and the nature of the financial
    interest:

> No.

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae
_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: No. 25-5357          Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, FOIA Advisor

*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome? If yes, list the identity of such corporation and the nature of the financial
      interest:

None known.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae
_____

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-5357          Case Name: Stovall v. Jefferson County, et al.

Name of counsel:  Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Defense of Freedom Institute for Policy Studies
*Name of Party*
makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae
_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                              Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: No. 25-5357          Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel:  Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Barry Goldwater Institute for Public Policy Research
*Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

N/A.

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae
_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: No. 25-5357          Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Freedom of the Press Foundation
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: No. 25-5357                    Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Defending Education
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome? If yes, list the identity of such corporation and the nature of the financial
    interest:

    No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: No. 25-5357          Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Kentucky Open Government Coalition

*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

## CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ryan P. Mulvey
Counsel of Record for Amici Curiae

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: No. 25-5357          Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel:  Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Mackinac Center for Public Policy
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
     identity of the parent corporation or affiliate and the relationship between it and the named
     party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
     in the outcome?  If yes, list the identity of such corporation and the nature of the financial
     interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae
_____

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: No. 25-5357              Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae


Pursuant to 6th Cir. R. 26.1, Wisconsin Institute for Law & Liberty
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.


2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.


CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae
_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: No. 25-5357          Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, Alliance Defending Freedom
*Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> Alliance Defending Freedom is aware of no publicly owned corporation, not a party to this appeal, that has a financial interest in the outcome of this appeal.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae
_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: No. 25-5357          Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel:  Ryan P. Mulvey, Counsel of Record for Amici Curiae

Pursuant to 6th Cir. R. 26.1, National Taxpayers Union Foundation
*Name of Party*
makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 18, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ryan P. Mulvey
Counsel of Record for Amici Curiae

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: No. 25-5357            Case Name: Stovall v. Jefferson Cty., et al.

Name of counsel: Ryan P. Mulvey, Counsel of Record for Amici Curiae


Pursuant to 6th Cir. R. 26.1, Sutherland Institute
                                        *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

| |
|---|
| No. |

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome? If yes, list the identity of such corporation and the nature of the financial
      interest:

| |
|---|
| No. |


| CERTIFICATE OF SERVICE |
|---|
| I certify that on _____ June 18, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.<br><br>        s/Ryan P. Mulvey<br>        Counsel of Record for Amici Curiae<br>        _____ |

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Table of Authorities ................................................................... ii

Interest of *Amici Curiae* .............................................................1

Summary of Argument ..................................................................7

Argument ...................................................................................8

   I.   The Copyright Act is not a withholding statute. ..............................8

   II.  There are important policy reasons for ensuring federal jurisdiction
       to preserve public access to copyrighted materials. ......................14

Conclusion ...............................................................................21

List of *Amici Curiae* ................................................................22

Certificate of Compliance ..........................................................24

Certificate of Service ................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Philadelphia City Planning Commission,*
　　125 A.3d 92 (Pa. Commw. Ct. 2015) ...................................................16

*Atari Games Corp. v. Nintendo of America, Inc.,*
　　975 F.2d 832 (Fed. Cir. 1992) ...............................................................9

*Garlick v. Naperville Township,*
　　84 N.E.3d 607 (Ill. App. Ct. 2017) ......................................................15

*Hooker v. Department of Health & Human Services,*
　　887 F. Supp. 2d 40 (D.D.C. 2012)..................................................11, 12

*Jartech, Inc. v. Clancy,*
　　666 F.2d 403 (9th Cir. 1982) ...........................................................9, 13

*National Council on Teacher Quality v.*
　　*Minnesota State Colleges & Universities,*
　　837 N.W.2d 314 (Minn. Ct. App. 2013).........................................15, 16

*National Council of Teachers Quality, Inc. v.*
　　*Curators of the University of Missouri,*
　　446 S.W.3d 723 (Mo. 2014) .................................................................15

*Naumes v. Department of the Army,*
　　588 F. Supp. 3d 23 (D.D.C. 2022)........................................................12

*Pictometry International Corporation v.*
　　*Freedom of Information Commission,*
　　307 Conn. 648 (Conn. 2013) ................................................................15

*Severe Records, LLC v. Rich,*
　　658 F.3d 571 (6th Cir. 2011) ...............................................................10

*Sony Corp. of America v. Universal Studios, Inc.,*
　　464 U.S. 417 (1984)..............................................................................13

*St. Paul's Benevolent Educational & Missionary Institute v.*
   *United States,*
   506 F. Supp. 822 (N.D. Ga. 1980) ..................................................... 11

*Stovall v. Jefferson County Board of Education,*
   No. 24-0336, 2025 WL 848467 (W.D. Ky. Mar. 18, 2025) ........................ 7, 11

*T.B. Harms Co. v. Eliscu,*
   339 F.2d 823 (2d Cir. 1964) ............................................................ 10

*Venetian Casino Resort v.*
   *Equal Employment Opportunity Commission,*
   453 F. Supp. 2d 157 (D.D.C. 2006) ................................................... 9

*Weisberg v. Department of Justice,*
   631 F.2d 824 (D.C. Cir. 1980) ..................................................... 11, 12, 13

*Zellner v. Cedarburg School District,*
   731 N.W.2d 240 (Wisc. 2007) ......................................................... 15

**Statutes**

5 U.S.C. § 552(a)(8)(i)(I) ................................................................... 12

5 U.S.C. § 552(b)(3) ........................................................................ 11

5 U.S.C. § 552(b)(4) ........................................................................ 12

17 U.S.C. § 106(1) ............................................................................ 8

17 U.S.C. § 106(3) ............................................................................ 8

17 U.S.C. § 107 ............................................................................ 9, 12

17 U.S.C. § 704(c) ............................................................................ 9

17 U.S.C. § 705(b) ............................................................................ 9

17 U.S.C. § 706(b) ............................................................................ 9

28 U.S.C. § 1338(a) .......................................................................... 10

Kan. Stat. Ann. § 45-219(a) .............................................................. 17

Ky. Rev. Stat. § 61.870(2) ...................................................................7

Ky. Rev. Stat. § 61.871 .......................................................................8

Ky. Rev. Stat. § 61.872(1) ...................................................................8

Ky. Rev. Stat. § 61.872(2)(a) ...............................................................8

Ky. Rev. Stat. § 61.878(1)(a)-(s) ..........................................................8

Ky. Rev. Stat. § 61.878(1)(c)(1) .........................................................13

Ky. Rev. Stat. § 61.878(1)(k).........................................................7, 8

Neb. Rev. Stat. § 84-712(1) ...............................................................17

S.D. Codified Laws § 1-27-1 .............................................................17

Utah Code Ann. § 63G-2-103(24)(b)(iv)..............................................17

Wis. Stat. § 19.32(2) .........................................................................17

**Regulations**

37 C.F.R. § 201.2(d)(2)......................................................................10

**Enacted Legislation**

Act No. 649, "Public School Access and Transparency Act," S.B. 572,
95th Gen. Assemb., Reg. Sess. (Ark. 2025) .......................................20

**Academic Literature**

Frank D. LoMonte, *Copyright Versus the Right to Copy: The Civic
Danger of Allowing Intellectual Property Law to Override State
Freedom of Information Law*,
53 Loy. Univ. Chi. L.J. 159, 161 (2021) ...............................14, 17, 21

Robert M. Gellman, *Twin Evils: Government Copyright and
Copyright-Like Controls over Government Information*,
45 Syracuse L. Rev. 999, 1006 (1995) ..............................................14

## Other Authorities

"A Model for Transparency in School Training and Curriculum,"
*Manhattan Institute*, Dec. 1, 2021, https://manhattan.institute/
article/a-model-for-transparency-in-school-training-and-curriculum ...............18

"About the Report Card," *Heritage Foundation*,
https://www.heritage.org/educationreportcard/pages/about.html  .....................18

Chris Papst, "'It should be an open book': Maryland parents demand
access to school curriculum," *Fox5 News*, Mar. 7, 2022,
https://foxbaltimore.com/news/project-baltimore/maryland-
parents-demand-access-to-school-curriculum-open-book-
baltimore-county-public-schools .......................................................................17

"Considering copyright law and sharing curriculum," *Sutherland
Institute*, May 6, 2025, https://sutherlandinstitute.org/considering-
copyright-law-and-sharing-curriculum ...............................................................18

Department of Justice, FOIA Update, vol. IV, no. 4,
"Copyrighted Materials and the FOIA " ...........................................................11

"Keep Politics Out of the Classroom with Academic Transparency,"
*Goldwater Institute*, https://www.goldwaterinstitute.org/
issues/academic-transparency/academictransparency ........................................18

Kevin Schmidt & Ryan Mulvey, "New Arkansas Law Prevents Abuse
of Copyright to Ensure Access to Educational Materials,"
*Americans for Prosperity*, Apr. 17, 2025,
https://americansforprosperity.org/policy-corner/new-arkansas-
law-prevents-abuse-of-copyright-to-ensure-access-to-educational-
materials ...............................................................................................................20

"Preventing the Abuse of Copyright to Ensure Public Access to
Educational Materials," *Right on Transparency*,
https://rightontransparency.org/preventing-the-abuse-of-copyright ............19, 20

"Public School Access and Transparency Act," *Americans for
Prosperity Foundation*, https://americansforprosperity.org/wp-
content/uploads/2025/03/Public-School-Access-and-Transparency-
Act-Model-Legislation.pdf ..................................................................................19

## INTEREST OF *AMICI CURIAE*

*Amicus curiae* Americans for Prosperity ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society.[1]  One of those ideas is open government.  To that end, AFPF considers the federal Freedom of Information Act ("FOIA") and public-records laws at the state level to be integral tools for ensuring accountability.  AFPF regularly requests records under the FOIA and state public-records laws, and it prosecutes those requests before agencies and courts.  AFPF also often appears as *amicus curiae* before federal and state courts.

AFPF is familiar with the use of the Copyright Act to withhold agency records or otherwise frustrate public access to information.  It has worked as part of an open-government coalition—"Right on Transparency"—to draw attention to this abuse of federal law.  As a frequent requester, AFPF has a compelling interest in federal courts clarifying the proper scope of the Copyright Act and "fair use" so that agency records are not unlawfully kept secret from the interested public.

*Amicus curiae* FOIA Advisor is an online, noncommercial forum designed to help the public learn about the federal FOIA.  Its staff answers questions about

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici curiae* state that no counsel for a party other than *amici curiae* authored this brief in whole or in part, and no counsel, party, or person other than *amici curiae* has made a monetary contribution intended to fund the preparation or submission of this brief.

1

FOIA-related topics, highlights news developments of interest to the FOIA and transparency communities, compiles and opines on opinions in FOIA cases, and publishes commentary on issues concerning access to government information.

*Amicus curiae* Defense of Freedom Institute for Policy Studies ("DFI") is a national nonprofit organization dedicated to defending and advancing educational freedom and opportunities for every American family and student and to protecting the civil and constitutional rights of Americans at school. DFI was founded in 2021 by former senior leaders of the U.S. Department of Education who are experts in education law. As part of its mission, DFI monitors and conducts oversight of federal and state education regulators and related government entities, including by serving and prosecuting records requests through the Freedom of Information Act and similar statutes.

*Amicus curiae* Goldwater Institute was established in 1988 as a nonpartisan public policy and research foundation dedicated to advancing the principles of limited government, economic freedom, and individual responsibility through litigation, research papers, editorials, policy briefings, and forums. Through its Scharf-Norton Center for Constitutional Litigation, the Institute litigates and occasionally files *amicus* briefs when its or its clients' objectives are implicated.

Among the Institute's mission areas is defending the essential principle of open and transparent government in our constitutional republic. The Institute

2

regularly submits public records requests and represents individuals in cases involving improper denials of access to public information. It has published citizen guides on how to obtain public records,[2] and has advocated for the rights of parents to understand and influence what their children are taught and exposed to in public schools. The Institute believes that citizens have a right to know what their government is doing, and that public agencies should not be allowed to conceal information by misusing copyright laws as a shield from transparency and accountability.

*Amicus curiae* Freedom of the Press Foundation ("FPF") is a non-profit organization that protects, defends, and empowers public-interest journalism. FPF regularly files Freedom of Information Act requests and writes about and participates in legal proceedings to oppose legislation, laws, or court orders that violate the First Amendment, increase government secrecy, or undermine press freedoms.

*Amicus curiae* Defending Education is a national, 501(c)(3) non-profit grassroots membership association. Its members include hundreds of parents with children in K-12 schools and colleges and universities across the country. Launched in 2021, Defending Education uses advocacy, public records requests, and if necessary, litigation to combat the increasing politicization and indoctrination of American education. Defending Education uses both the federal Freedom of

---

[2] https://www.openmygovernment.org/template/OPEN%20MY%20GOVERNMENT.DIGITAL.pdf.

Information Act ("FOIA") and state public records laws to ensure the accountability of educational institutions. The products of Defending Education's public records requests often form the basis of the association's published research and commentary informing the public on issues related to education. Defending Education also regularly appears as *amicus curiae* before federal courts on cases involving issues related to its mission.

*Amicus curiae* Kentucky Open Government Coalition, Inc. is a Kentucky nonpartisan, nonprofit corporation established in 2019 in response to legislative attempts to circumscribe the statutory rights of the public to open records and meetings and to provide an independent voice for the public in these ongoing challenges. From its inception, the Coalition identified transparency and accountability as core principles. Given this commitment, the Kentucky Open Government Coalition has an immediate and direct interest in the issue before the Court. The Coalition's interest is in securing clarity on an issue that the Kentucky Attorney General has unsuccessfully struggled with in his statutorily assigned quasi-adjudicative role for decades. It is equally our interest in preserving the state's robust open records law from public agency misinterpretation and misapplication of federal law to restrict rights of access to public records.

*Amicus curiae* Mackinac Center for Public Policy is a Michigan based, nonpartisan research and educational institute advancing policies fostering free

markets, limited government, personal responsibility, and respect for private property. The Center is a 501(c)(3) organization founded in 1987. In furtherance of this mission, the Mackinac Center routinely uses open records laws to obtain relevant documents from state and local governments, and frequently litigates open records cases.

*Amicus curiae* Wisconsin Institute for Law & Liberty, Inc. ("WILL") is a nonprofit, public interest law and policy center whose mission is to promote the public interest in free markets, limited government, individual liberty, a robust civil society, and is dedicated to the formation of informed and capable citizens. In furtherance of that mission, WILL advocates for transparency and accountability at all levels of government, and has an interest in ensuring all Americans have access to all records being maintained or utilized by government entities, including schools.

*Amicus curiae* Alliance Defending Freedom ("ADF") is a nonprofit legal organization that advances every person's right to live and speak the truth. Core to this mission is protecting parents' fundamental right to direct the upbringing, education, and health care of their children. To that end, ADF regularly requests records from public schools and other government entities to reveal whether they are infringing on individuals' free speech and parental rights. ADF is interested in ensuring such records are freely provided as the law demands.

Founded in 1973, *amicus curiae* National Taxpayers Union Foundation ("NTUF") is a non-partisan research and educational organization dedicated to showing Americans how taxes, government spending, and regulations affect everyday life.  NTUF advances principles of limited government, simple taxation, and transparency on both the state and federal level.  NTUF's Taxpayer Defense Center advocates for taxpayers in the courts, produces scholarly analyses, and engages in direct litigation and *amicus curiae* briefs upholding taxpayers' rights and challenging administrative overreach by tax authorities.

*Amicus curiae* Sutherland Institute is a Utah nonprofit, nonpartisan public policy organization with a mission to promote the constitutional values of faith, family and freedom.  Sutherland promotes the constitutional right of free exercise of religion and parental rights in education.

6

## SUMMARY OF ARGUMENT

There is a simple yet substantial question of federal law that underlies the parties' jurisdictional dispute: Is the Copyright Act a withholding statute?  The resolution of that question—as well as the related question of how the Copyright Act interacts with the Kentucky Open Records Act ("KORA")—does not turn on a proper reading of state law but presents a purely federal issue.  The district court erred by rejecting Mrs. Stovall's federal-question arguments, which hardly attempt to "anticipate a defense," let alone "bypass a state court action" through "procedural fencing" or creative lawyering.  *Stovall v. Jefferson Cty. Bd. of Educ.*, No. 24-0336, 2025 WL 848467, at *3–4 (W.D. Ky. Mar. 18, 2025).

The parties agree the mental-health surveys that Mrs. Stovall requested are "public records" under the KORA, *see* Ky. Rev. Stat. § 61.870(2), and that the only stated basis for her denial of access was Exemption (1)(k).  That exemption, however, depends on the applicability of a "federal law" that bars "disclosure."  *Id.* § 61.878(1)(k).  Whether the Copyright Act "prohibits" disclosure—or, more precisely, how far it regulates public access to copyrighted materials under "fair use"—is a question that "arises under" the Copyright Act and should not be left to the state courts to resolve.

The district court should have granted Mrs. Stovall declaratory relief.  It is a misunderstanding of the Copyright Act to construe it as a federal withholding statute

7

that qualifies for incorporation into the KORA.  The common-law principle of "fair use" permits disclosure and use of copyrighted materials when they qualify as public records.  There are also compelling policy grounds for ensuring requesters can seek adequate judicial review when state governments rely on federal law to assert third-party copyright claims and deny requesters access to public records.

This Court should reverse the district court.

## ARGUMENT

### I.      The Copyright Act is not a withholding statute.

The KORA provides Kentucky residents with a general right to access all "public records" within the custody or legal control of a "public agency."  Ky. Rev. Stat. § 61.872(1), (2)(a).  Access is limited by nineteen express exemptions, *id.* § 61.878(1)(a)–(s), which are "strictly construed."  *Id.* § 61.871.  Relevant here, the KORA disallows access to "[a]ll public records or information the disclosure of which is prohibited by federal law or regulation[.]"  *Id.* § 61.878(1)(k).  That provision effectively incorporates mandatory bars to disclosure in federal law into the KORA as additional grounds for withholding.

Yet the Copyright Act is not a "law" that "prohibit[s]" disclosure.  *Id.*  To be sure, the Act presumptively reserves to copyright holders an "exclusive" right to "reproduce" or "distribute copies" of works.  17 U.S.C. § 106(1), (3).  But that right is subject to important limitations like the doctrine of "fair use," which permits

8

reproduction and distribution for "purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research." *Id.* § 107.[3]  Rather than prohibit disclosure, as anticipated by provisions like KORA Exemption (1)(k), the Copyright Act merely *regulates* public access.  This is a straightforward point of federal law.

Consider how the Copyright Act guarantees a public right to physical inspection of works on deposit with the Copyright Office.  *See id.* § 705(b) ("[A]rticles deposited . . . and retained . . . shall be open to public inspection").  Such a right of inspection would make little sense if the Act functioned as a categorical bar to disclosure.  And quite apart from inspection, the Act ensures copies of works on deposit "shall be authorized or furnished" to members of the public upon request under "conditions specified" in Copyright Office regulations.  17 U.S.C. § 706(b); *see id.* § 704(c) ("facsimile reproduction[s]" of deposits are to be treated as "records" of the Copyright Office); *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832,

---

[3] The government's release of a public record containing copyrighted material—as distinct from a requester's intended or subsequent use of the record—may itself be an instance of "fair use."  *See Jartech, Inc. v. Clancy*, 666 F.2d 403, 406–07 (9th Cir. 1982) (reproduction and use of copyrighted films by a local government entity for official purposes, *e.g.*, use in a judicial proceeding, is "fair use").  Or an official act of disclosure might be altogether unregulated: "[W]hile the Copyright Act proscribes infringement of copyrighted material"—and provides a private right of action to copyright holders to act on infringement—"nothing in the Act requires confidential treatment *by the government*[.]"  *Venetian Casino Resort v. Equal Emp't Opportunity Comm'n*, 453 F. Supp. 2d 157, 166 (D.D.C. 2006) (emphasis added), *rev'd on other grounds*, 530 F.3d 925 (D.C. Cir. 2008).  Both possibilities, however, can likely only be settled as a matter of federal law in a federal court.

841 (Fed. Cir. 1992) ("In conformance with protective regulations, this provision permits access to [and reproduction of] copyrighted works."). Thus, while reproduction and disclosure might be closely regulated, *see* 37 C.F.R. § 201.2(d)(2), the exceptions prove the rule: the Copyright Act is not a withholding statute.

These points are hardly tangential to the questions presented on appeal. They reinforce Mrs. Stovall's overarching point that any meaningful ruling on non-infringement or "fair use," whether raised in a coercive action by Appellee NCS Pearson, Inc. or in an inverse declaratory suit (as below), necessarily depends on construction of the Copyright Act. And federal courts have exclusive jurisdiction to provide that construction. *See* 28 U.S.C. § 1338(a); *see also T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964).

It should hardly matter whether the construction, or any afforded relief, will have downstream consequences for a party's rights under a state public-records law or its claims in any future state-court proceeding. And yet that seemed to be the focus of the district court. As this Court observed in *Severe Records, LLC v. Rich*, the "arises under" inquiry necessary for establishing federal jurisdiction will ultimately be "considerably more sophisticated" than "merely" claiming the Copyright Act's relevance to a case. 658 F.3d 571, 581 (6th Cir. 2011) (cleaned up). The district court unfortunately adopted a rather *un*sophisticated approach by concluding, without explanation, that Mrs. Stovall was merely trying to "bypass" the

KORA's review processes and seek a federal judgment on the limits of Exemption (1)(k).  *See Stovall*, 2025 WL 848467, at *3.  In truth, Mrs. Stovall's case is only indirectly about the KORA.  It really centers on the nature and limits of the protections afforded by the Copyright Act.

Aside from the plain text of the Copyright Act, relevant federal FOIA caselaw confirms the Act does not function as a prohibition on disclosure.[4]  Courts have long recognized that "FOIA does not provide any specific exemption for copyrighted materials, nor does the [C]opyright [A]ct meet the [statute's mandatory] exemption standards[.]"  *St. Paul's Benevolent Educ. & Missionary Inst. v. United States*, 506 F. Supp. 822, 830 (N.D. Ga. 1980).  In other words, the Copyright Act cannot be construed as a "statute exempting disclosure," at least in any mandatory sense. *Weisberg v. Dep't of Justice*, 631 F.2d 824, 826 (D.C. Cir. 1980); *see id.* at 829 ("FOIA requires the Government to furnish members of the public with copies of copyrighted materials on the same terms as any other 'agency records.'"); *Hooker v. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 61 n.18 (D.D.C. 2012) ("[T]he

---

[4] KORA Exemption (1)(k) is analogous to FOIA Exemption 3, which protects records "specifically exempted from disclosure by statute[.]"  5 U.S.C. § 552(b)(3). The Copyright Act is *not* a recognized Exemption 3 statute.  Dep't of Justice, FOIA Update, vol. IV, no. 4, "Copyrighted Materials and the FOIA" (Jan. 1, 1983) ("[T]he Copyright Act cannot be considered a 'nondisclosure' statute. . . . [T]here is nothing whatsoever in the statute or its legislative history to suggest that Congress intended it to trigger Exemption 3."), *available at* https://www.justice.gov/oip/blog/foia-update-oip-guidance-copyrighted-materials-and-foia.

11

Act does not satisfy the requirement of 'explicit nondisclosure[.]'"). Any other interpretation risks "allow[ing] an agency 'to mask its processes or functions from public scrutiny' simply by asserting a third party's copyright" claims. *Weisberg*, 631 F.2d at 828 (citation omitted).

Federal courts have determined the "only approach for protecting copyrighted documents" under the FOIA is Exemption 4. *Hooker*, 887 F. Supp. 2d at 61 n.18. Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged and confidential." 5 U.S.C. § 552(b)(4). It does not operate like Exemption 3 as it is not a mandatory bar to disclosure, nor does it entail the actual application of the Copyright Act. Application of Exemption 4 instead requires an agency to consider both certain technical prerequisites for withholding—*viz.*, whether a record reflects a "trade secret" or "commercial or financial information . . . privileged or confidential"—*and*, as an independent matter, whether disclosure "would harm an interest protected by" the exemption, *id.* § 552(a)(8)(i)(I), such as harm to the commercial or financial interest of a copyright holder. *See, e.g.*, *Naumes v. Dep't of the Army*, 588 F. Supp. 3d 23, 42 (D.D.C. 2022).

That approach, which balances the public interest in access with potential injury to a claimed copyright holder, makes sense. Among other things, it complements the design and purpose of the Copyright Act, which explicitly permits the use of copyrighted works under the doctrine of "fair use." *See* 17 U.S.C. § 107.

Assuming a particular copyrighted work qualifies as a "trade secret" or "confidential" commercial information "obtained from a person," there is little reason to think its release should be treated as per se "commercially exploitative of the copyright holder's market." *Jartech, Inc.*, 666 F.2d at 407; *see Weisberg*, 631 F.2d at 827 n.16. A more nuanced inquiry is needed. That kind of inquiry is part of Exemption 4 (and its corollary in the KORA[5]) but conflicts with the categorical nature of Exemption 3 and Exemption (1)(k).

At the least, if disclosure or use of a public record counts as "fair use," public access must fall outside the ambit of the Copyright Act's restrictions on reproduction and distribution. *See Sony Corp. of Am. v. Universal Studios, Inc.*, 464 U.S. 417, 433 (1984) ("Any individual may reproduce a copyrighted work for a 'fair use[.]'"). That is why Mrs. Stovall sought clarity from a federal court about the proper scope of the Copyright Act and the "fair use" doctrine vis-à-vis her right of access under the KORA.[6] The district court was wrong to deny her such clarity.

---

[5] Ky. Rev. Stat. § 61.878(1)(c)(1).

[6] Mrs. Stovall takes the view that actual infringement of the Copyright Act might still serve as grounds for withholding under the KORA. *See* Appellants' Br. at 16. *Amici* advance a stronger position that, when properly understood, the Copyright Act *as a matter of federal law* does not function as a prohibition on disclosure and therefore would not qualify for incorporation into the KORA under Exemption (1)(k). That slight disagreement is inconsequential to the instant appeal.

## II.   There are important policy reasons for ensuring federal jurisdiction to preserve public access to copyrighted materials.

There are important policy reasons for ensuring litigants like Mrs. Stovall can obtain declaratory relief under the Copyright Act to vindicate their rights of public access under state law.  "While the collision between copyright law and public-records law has seldom resulted in litigation, the potential for the former to swallow the latter is ominous."  Frank D. LoMonte, *Copyright Versus the Right to Copy: The Civic Danger of Allowing Intellectual Property Law to Override State Freedom of Information Law*, 53 Loy. Univ. Chi. L.J. 159, 161 (2021).   "Government bureaucracies have always displayed a tendency to control the information of their agencies, and the temptation increases as the value and the uses of the information expand."  Robert M. Gellman, *Twin Evils: Government Copyright and Copyright-Like Controls over Government Information*, 45 Syracuse L. Rev. 999, 1006 (1995). That is almost axiomatically true in a case like this one, where records reflect government activity that touches on particularly sensitive topics like public education and the relationship between teachers, administrators, parents, and pupils.

State courts, however, are extremely reluctant to engage meaningfully with questions arising at the intersection of the Copyright Act, "fair use," and public access to government information.  As Mrs. Stovall ably demonstrates, that mainly stems from federal courts' exclusive jurisdiction "over suits 'arising under' the Copyright Act."  Appellant's Br. at 11.  But even in instances where copyright might

14

play an incidental role, or perhaps there is some colorable argument for concurrent jurisdiction, state courts do not engage.  *See, e.g.*, *Garlick v. Naperville Twp.*, 84 N.E.3d 607, 622 (Ill. App. Ct. 2017) ("[T]his court is not the proper forum for copyright claims.").[7]  In *National Council of Teachers Quality, Inc. v. Curators of the University of Missouri*, for example, the Missouri Supreme Court presumed that disclosure of university syllabi would violate the Copyright Act, 446 S.W.3d 723, 726–29 (Mo. 2014), and declined to address compelling "fair use" arguments—both with respect to the government's potential *disclosure* and the requester's *intended use* of the syllabi—because only "federal courts have 'original jurisdiction of any civil action arising under [the Copyright Act].'"  *Id.* at 729 (citation omitted).  And the Supreme Court of Connecticut ruled similarly in *Pictometry International Corporation v. Freedom of Information Commission*: "Neither the [state FOIA] commission nor this court . . . has jurisdiction to determination whether a particular use of copyrighted materials infringes on the copyright holder's rights under federal copyright law[.]"  307 Conn. 648, 682 (Conn. 2013).

---

[7] While not dispositive to the existence of federal jurisdiction, *see* Appellant's Br. at 15–16, there have been some aberrant exceptions when state courts grappled with the Copyright Act.  *See, e.g.*, *Zellner v. Cedarburg Sch. Dist.*, 731 N.W.2d 240, 247 (Wisc. 2007); *see also Nat'l Council on Teacher Quality v. Minn. State Colleges & Univs.*, 837 N.W.2d 314, 318–19 (Minn. Ct. App. 2013) (holding that the Copyright Act preempts the state data-practices law, but an agency still "cannot refuse to provide the requested data relying only on its hypothetical concern that the third-party use might *not* constitute fair use").

The Commonwealth Court of Pennsylvania's decision in *Ali v. Philadelphia City Planning Commission* is particularly unsettling.  The *Ali* court started by concluding the Copyright Act was not the sort of federal law intended to be incorporated into the state's Right-to-Know Law "because the exclusive rights of [a] copyright holder are not unqualified in light of Section 107," that is, "fair use."  *See* 125 A.3d 92, 101–02 (Pa. Commw. Ct. 2015).  But since the court thought that interpretation would "conflict" with federal law, it held the Copyright Act controlled and provided an extra-statutory basis for refusing the duplication of public records:

> Because we lack jurisdiction under federal law to resolve the question of whether . . . disclosure of copyrighted material . . . without the owner's consent constitutes infringement under the Copyright Act, . . . our review must be confined to determining whether the local agency has met its burden of providing facts sufficient to show that forced duplication . . . implicates rights and potential liabilities arising under the Copyright Act that can only be resolved by the federal courts.

*Id.* at 104–05.[8]  This situation could only have been avoided with federal declaratory relief of the sort sought by (and denied to) Mrs. Stovall.  Yet a decision like the one below leaves requesters between a rock and a hard place, unable to secure adequate review in federal court and unlikely to successfully advance a copyright argument in state court when presented as a dispute implicating a Freedom of Information law.

---

[8] The *Ali* court noted a "material difference between [(1)] an exempt and/or nonpublic record, which an agency is not required to provide access to at all under the [Right-to-Know Law], and [(2)] a public and nonexempt record that may be subject to limited access under the [same].  Copyrighted information falls into the latter category."  *Id.* at 105.

16

The reality is most states' public-records laws are "generally ambiguous about whether the copyright status of records interferes with the ability to inspect of duplicate them." LoMonte, *supra*, at 174. Some exclude copyrighted materials from the definition of a "record" subject to disclosure. *See* Wis. Stat. § 19.32(2); Utah Code Ann. § 63G-2-103(24)(b)(iv). Others provide an express exemption based on federal copyright. *See* Kan. Stat. Ann. § 45-219(a); Neb. Rev. Stat. § 84-712(1); S.D. Codified Laws § 1-27-1. But the vast majority are either silent or contain broad language incorporating federal laws or regulations prohibiting disclosure, such as found in the KORA. So long as that is the norm, it is essential that federal courts be available to provide a definitive and uniform interpretation of the Copyright Act and "fair use." "Putting state courts in the business of adjudicating copyright disputes risks creating a fragmented body of irreconcilable interpretations of the Copyright Act of uncertain precedential value." LoMonte, *supra*, at 190. That cannot be right.

And the problem is not going away—it will only grow. Mrs. Stovall sought copies of surveys administered by her local public school because she "was worried" they were "inappropriate and intrusive," seeking information about "sexual orientation, sexual activity, and mental health without parental consent or knowledge." Appellant's Br. at 2–3. Many other parents have similar concerns that extend to the types of learning materials used in classrooms. *See, e.g.*, Chris Papst, "'It should be an open book': Maryland parents demand access to school

17

curriculum," *Fox5 News*, Mar. 7, 2022, https://foxbaltimore.com/news/project-baltimore/maryland-parents-demand-access-to-school-curriculum-open-book-baltimore-county-public-schools (last visited June 16, 2025).  But those parents are increasingly facing copyright claims as justification for denial of access to public records.  *See, e.g.*, "Considering copyright law and sharing curriculum," *Sutherland Inst.*, May 6, 2025, https://sutherlandinstitute.org/considering-copyright-law-and-sharing-curriculum (last visited June 16, 2025).

Some organizations are pushing back against this trend and have developed model policies and education materials that aim to clarify whether copyright law can justify withholding school materials.  *See, e.g.*, "Keep Politics Out of the Classroom with Academic Transparency," *Goldwater Inst.*, https://www.goldwaterinstitute.org/issues/academic-transparency/academictransparency  (last visited June 16, 2025); "A Model for Transparency in School Training and Curriculum," *Manhattan Inst.*, Dec. 1, 2021, https://manhattan.institute/article/a-model-for-transparency-in-school-training-and-curriculum (last visited June 16, 2025); "About the Report Card," *Heritage Found.*, https://www.heritage.org/educationreportcard/pages/about.html (last visited June 16, 2025).

Americans for Prosperity—an organization that works closely with *amicus* AFPF—has developed its own model legislation that recommends states amend their public-records laws to expressly *exclude* the Copyright Act as a basis for non-

18

disclosure when it comes to public schools: "Access to learning materials . . . shall not be denied to any citizen on grounds that such disclosure, or inspection and copying, would constitute an infringement of copyright under federal law." "Public School Access and Transparency Act," *Ams. for Prosperity Found.*, https://americansforprosperity.org/wp-content/uploads/2025/03/Public-School-Access-and-Transparency-Act-Model-Legislation.pdf (last visited June 16, 2025). That model bill builds on a policy adopted by the "Right on Transparency" coalition. *See* "Preventing the Abuse of Copyright to Ensure Public Access to Educational Materials," *Right on Transparency*, https://rightontransparency.org/preventing-the-abuse-of-copyright (last visited June 16, 2025).

The approach endorsed by "Right on Transparency"—as well as Americans for Prosperity and others—aims to disentangle federal copyright law from state FOIA law in the context of learning materials while leaving untouched a copyright holder's undisputed right to purse an infringement claim post-disclosure:

> Aside from school curricular materials qualifying as public records . . . their use falls under "fair use" when used to inform the public on a matter of public debate. Indeed, despite what some schools might argue, parents' ability to obtain these records is protected by federal and state law. The federal Protection of Pupil Rights Amendment (PPRA), for example, requires parents at least have the right to "inspect . . . any instructional material used as part of the educational curriculum for [a] student." (20 U.S.C. § 1232h(c)(1)(C)(i)) Freedom of Information laws . . . can and should similarly protect access to and use of curricular materials.

> It does not violate copyright to use school materials for . . . ["fair use"]. Schools invoking copyright—all of which have lawyers giving them taxpayer-funded legal advice—ought to know this. Parents are not trying to profit from the work of authors and publishers; they are seeking information about their children's education.
>
> If a requester misuses copyrighted materials obtained under public-records laws, that requester risks penalties the same way as any other copyright offender. For instance, if a requester asks for a lesson and then assembles and sells it online, the publisher can sue. Mere fear that a requester *may* misuse copyrighted documents is not an excuse for overriding public-records laws, disregarding the importance of transparency, and dismissing parental rights.

*Id.* One state—Arkansas—has already adopted legislation along those lines. *See* Act No. 649, "Public School Access and Transparency Act," S.B. 572, 95th Gen. Assemb., Reg. Sess. (Ark. 2025), *available at* https://arkleg.state.ar.us/Home/ FTPDocument?path=%2FACTS%2F2025R%2FPublic%2FACT649.pdf; *see also* Kevin Schmidt & Ryan Mulvey, "New Arkansas Law Prevents Abuse of Copyright to Ensure Access to Educational Materials," *Ams. for Prosperity*, Apr. 17, 2025, https://americansforprosperity.org/policy-corner/new-arkansas-law-prevents-abuse-of-copyright-to-ensure-access-to-educational-materials (last visited June 16, 2025).

Of course, the abuse of third-party copyright claims by opaque government agencies extends beyond public schools denying concerned parents access to curricular materials or surveys like those sought by Mrs. Stovall. The practice can also frustrate news coverage and media requesters. As one scholar observers, "copyright can be weaponized to conceal or minimize wrongdoing, [even] where the

20

[copyright plaintiff's] motive has nothing to do with protecting creative investment in commercial valuable work." LoMonte, *supra*, at 183. In those cases, the law—and federal courts as guardians and arbiters of the Copyright Act—ought "to unmistakably protect the right to obtain, copy, and republish newsworthy documents without the chill of a costly infringement claim." *Id.* Granting the instant appeal and ensuring jurisdiction in court below would go a long way in obtaining that result.

## CONCLUSION

For these reasons, this Court should reverse the district court.

Dated: June 18, 2025                    Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
  *Counsel of Record*
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203
(571) 444-2841
rmulvey@afphq.org

*Counsel for* Amici Curiae

(complete list of *amici curiae* follows on the next page)

21

# LIST OF *AMICI CURIAE*

AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203

FOIA ADVISOR
P.O. Box 17218
Arlington, VA 22216

DEFENSE OF FREEDOM INSTITUTE FOR POLICY STUDIES
1455 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20004

GOLDWATER INSTITUTE
500 E. Coronado Road
Phoenix, AZ 85004

FREEDOM OF THE PRESS FOUNDATION
49 Flatbush Avenue #1017
Brooklyn, NY 11217

DEFENDING EDUCATION
4532 Lee Highway #119
Arlington, VA 22207

KENTUCKY OPEN GOVERNMENT COALITION
612 S. Main Street, Suite 203
Hopkinsville, KY 42240

MACKINAC CENTER FOR PUBLIC POLICY
140 W. Main Street
Midland, MI 48640

WISCONSIN INSTITUTE FOR LAW & LIBERTY
330 E. Kilbourn Avenue, Suite 725
Milwaukee, WI 53202

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260

NATIONAL TAXPAYERS UNION FOUNDATION
122 C Street, NW, Suite 700
Washington, DC 20001

SUTHERLAND INSTITUTE
420 E. South Temple Street, Unit 510
Salt Lake City, UT 84111

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 4,867 words. The brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: June 18, 2025                    */s/ Ryan P. Mulvey*
                                        Ryan P. Mulvey
                                            *Counsel of Record*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, I electronically filed the above Brief of *Amici Curiae* in Support of Appellant Miranda Stovall and Reversal with the United States Court of Appeals for the Sixth Circuit using the Appellate CM/ECF system. I further certify that the participants in this case are registered CM/ECF users, and service will be accomplished through the Appellate CM/ECF system.

Dated: June 18, 2025                    */s/ Ryan P. Mulvey*
                                        Ryan P. Mulvey
                                            *Counsel of Record*