# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

## MIRANDA STOVALL

Plaintiff-Appellant

v.

## JEFFERSON COUNTY, KY BOARD OF EDUCATION, *et al.*

Defendants-Appellees

---

On Appeal from the United States District Court for the
Western District of Kentucky, Louisville Division
No. 3:24-cv-00336

---

## BRIEF OF APPELLEE
## NCS PEARSON, INC.

Cory J. Skolnick
Jason P. Renzelmann
Samuel W. Wardle
J. Austin Hatfield
FROST BROWN TODD LLP
400 W. Market St., 32nd Floor
Louisville, KY 40202
(502) 589-5400
cskolnick@fbtlaw.com
jrenzelmann@fbtlaw.com
ahatfield@fbtlaw.com
swardle@fbtlaw.com

*Counsel for Appellee NCS Pearson,
Inc. d/b/a Pearson VUE*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Defendant-Appellee makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   Yes. NCS Pearson, Inc. is wholly owned by PN Holdings, Inc. PN Holdings, Inc. is wholly owned by Pearson Education, Inc. Pearson Education, Inc. is wholly owned by Pearson Overseas Holdings Limited. Pearson Overseas Holdings Limited is wholly owned by Pearson PLC.

2. Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   Yes. Pearson PLC is a publicly traded company.

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS ......................................... i

TABLE OF AUTHORITIES .................................................................iv

ORAL ARGUMENT STATEMENT ....................................................xi

STATEMENT OF JURISDICTION......................................................xi

STATEMENT OF ISSUES ................................................................ xii

STATEMENT OF THE CASE ..............................................................1

SUMMARY OF THE ARGUMENT ....................................................8

ARGUMENT .................................................................................12

   I.   **Standard of Review.**...................................................................12

   II.  **The District Court correctly held that Stovall's declaration did not arise under federal law.** ...............................................................13

       **A. Under the well-pleaded complaint rule, Stovall's suit merely seeks to adjudicate a defense to a claim created by state law, which is insufficient for federal question jurisdiction.**...................................14

       **B. Stovall's declaratory judgment claim is not the converse of any coercive action that would arise under federal law.**.........................19

       **C. Stovall's newly-asserted "substantial federal question" and pre-emption-based theories do not establish federal jurisdiction.**.........25

   III. **Alternatively, the District Court should be affirmed because Stovall's declaratory judgment claim is unripe.**...................................................29

   IV. **The District Court did not abuse its discretion by declining to exercise jurisdiction.**...............................................................................34

       **A. The Copyright Act's exclusive jurisdiction provisions do not alter district courts' discretion under the Declaratory Judgment Act.**....36

       **B. The District Court correctly held that the first two *Grand Trunk* factors supported declining jurisdiction.**..........................................40

**C. The District Court did not abuse its discretion in concluding the third *Grand Trunk* factor weighed against exercising jurisdiction.**..........................................................................44

**D. The District Court properly concluded the need to avoid unnecessary federal/state friction weighed against exercising jurisdiction.**..........................................................................46

**E. The District Court properly applied the final *Grand Trunk* factor.** ...................................................................................50

**CONCLUSION**...........................................................................53

**CERTIFICATE OF COMPLIANCE** ....................................................54

**CERTIFICATE OF SERVICE** ...........................................................55

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS** ........56

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
  300 U.S. 227 (1937)...............................................................................................14

*Ali v. Philadelphia City Plan. Comm'n*,
  125 A.3d 92 (Pa. Commw. Ct. 2015) ...................................................................41

*Alvey v. State Farm Fire & Cas. Co.*,
  2018 WL 3572526 (W.D. Ky. July 25, 2018) ......................................................47

*Am. Well Works Co. v. Layne & Bowler Co.*,
  241 U.S. 257 (1916)...............................................................................................17

*Amaretto Ranch Breedables v. Ozimals Inc.*,
  907 F. Supp. 2d 1080 (N.D. Cal. 2012)................................................................32

*AmSouth Bank v. Dale*,
  386 F.3d 763 (6th Cir. 2004) ................................................................................36

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023)...............................................................................................33

*Atwood v. Casey Cnty.*,
  137 S.W.2d 1079 (Ky. 1940)..................................................................................26

*Bd. of Chosen Freeholders of Cnty. of Burlington v. Tombs*,
  215 F. App'x 80 (3rd Cir. 2006).......................................................17, 18, 26, 27

*Beneficial Nat'l Bank v. Anderson*,
  539 U.S. 1 (2003).............................................................................................15, 27

*Bituminous Cas. Corp. v. J & L Lumber Co.*,
  373 F.3d 807 (6th Cir. 2004) ..........................................................................12, 52

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
  70 F.4th 914 (5th Cir. 2023) .................................................................................21

*Campbell v. Acuff–Rose Music, Inc.*,
  510 U.S. 569 (1994)...............................................................................................30

iv

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
70 F.3d 267 (2d Cir. 1995) ..................................................................................23

*Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
29 F.4th 792 (6th Cir. 2022) .........................................................................*passim*

*Cash-Darling v. Recycling Equip., Inc.*,
62 F.4th 969 (6th Cir. 2023) ...............................................................................25

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987).............................................................................................15

*Chase Bank USA, N.A. v. City of Cleveland*,
695 F.3d 548 (6th Cir. 2012) ...........................................................12, 19, 21, 28

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)................................................................................15, 16, 52

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976).............................................................................................36

*Courier-Journal, Inc. v. Cabinet for Health & Fam. Servs.*,
2011 WL 2173921 (E.D. Ky. June 1, 2011).................................................17, 18

*Crawford v. U.S. Dep't of Treasury*,
868 F.3d 438 (6th Cir. 2017) ..............................................................................22

*CSXT, Inc. v. Pitz*,
883 F.2d 468 (6th Cir. 1989) ..............................................................................52

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,
274 F.3d 377 (6th Cir. 2001) ..............................................................................30

*Doe v. Oberlin Coll.*,
60 F.4th 345 (6th Cir. 2023) ...............................................................................33

*Edmondson v. Alig*,
926 S.W.2d 856 (Ky. App. 1996).......................................................................42

*Est. of Cornell v. Bayview Loan Serv., LLC*,
908 F.3d 1008 (6th Cir. 2018) ............................................................................15

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*,
463 U.S. 1 (1983)..............................................................................20, 21, 22, 26

*Grand Trunk Western Railroad Co. v. Consolidated Rail Corp*.,
746 F.2d 323 (6th Cir. 1984) .......................................................................*passim*

*Gully v. First Nat. Bank*,
299 U.S. 109 (1936).............................................................................................19

*Gunn v. Minton*,
568 U.S. 251 (2013).......................................................................................*passim*

*Haines v. Fed. Motor Carrier Safety Admin.*,
814 F.3d 417 (6th Cir. 2016) ...............................................................................30

*Handshoe v. Perret*,
270 F. Supp. 3d 915 (S.D. Miss. 2017) ...............................................................31

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985).............................................................................................33

*Hayden v. 2K Games, Inc.*,
375 F. Supp. 3d 823 (N.D. Ohio 2019) ...............................................................32

*Hill v. Snyder*,
878 F.3d 193 (6th Cir. 2017) ...............................................................................30

*Hooker v. U.S. Dep't of Health & Human Servs.*,
887 F. Supp. 2d 40 (D.D.C. 2012)........................................................................50

*Jones v. Glad Music Publ'g & Recording LP*,
535 F. Supp. 3d 723 (M.D. Tenn. 2021) ..............................................................31

*Kunz v. Aoki*,
2021 WL 4860762 (E.D. Cal. Oct. 19, 2021)......................................................39

*Ky. Bd. of Examiners of Psychologists & Div. of Occupations & Pros., Dep't for Admin. v. Courier-J. & Louisville Times Co.*,
826 S.W.2d 324 (Ky. 1992)..................................................................................47

*Larry E. Parrish. P.C. v. Bennett*,
989 F.3d 452 (6th Cir. 2021) ...............................................................................35

vi

*Lawson v. Off. of Atty. Gen.*,
    415 S.W.3d 59 (Ky. 2013).....................................................................................42

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)................................................................................30, 33, 37

*Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*,
    287 F.3d 568 (6th Cir. 2002) ...............................................................................12

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir. 2007) ...............................................................................28

*Miller v. Bruenger*,
    949 F.3d 986 (6th Cir. 2020) .........................................................................19, 20

*Nat'l Council of Teachers Quality, Inc. v. Curators of Univ. of Mo.*,
    446 S.W.3d 723 (Mo. Ct. App. 2014) .............................................................24, 41

*Naumes v. Dep't of the Army*,
    588 F. Supp. 3d 23 (D.D.C. 2022)........................................................................43

*OverDrive Inc. v. Open E-Book F.*,
    986 F.3d 954 (6th Cir. 2021) ...............................................................................31

*Patton v. Fitzhugh*,
    131 F.4th 383 (6th Cir. 2025) ..............................................................................12

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)...............................................................................................48

*Pictometry Int'l Corp. v. Freedom of Info. Comm'n*,
    59 A.3d 172 (Conn. 2013) ...................................................................................41

*Porter v. Bondi*,
    127 F.4th 993 (6th Cir. 2025) ..............................................................................25

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
    344 U.S. 237 (1952)..............................................................................................19

*Rogers v. Ezell*,
    2019 WL 1262752 (W.D. Ky. Mar. 19, 2019) ...............................................47, 51

*Scottsdale Ins. Co. v. Flowers*,
513 F.3d 546 (6th Cir. 2008) ........................................................................*passim*

*Severe Records, LLC v. Rich*,
658 F.3d 571 (6th Cir. 2011) .................................................................16, 24, 31

*Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*,
771 F.3d 632 (9th Cir. 2014) ...............................................................................22

*Sierra Club v. Tenn. Dep't of Env't & Conservation*,
133 F.4th 661 (6th Cir. 2025) ..............................................................................23

*Ohio ex rel. Skaggs v. Brunner*,
549 F.3d 468 (6th Cir. 2008) ...............................................................................26

*State of Tex. v. W. Pub. Co.*,
681 F. Supp. 1228 (W.D. Tex. 1988) ...................................................................31

*State, Dep't of Health & Rehab. Servs. v. Southpointe Pharm.*,
636 So.2d 1377 (Fla. Ct. App. 1994)...................................................................17

*Strong v. Telectronics Pacing Sys., Inc.*,
78 F.3d 256 (6th Cir. 1996) .................................................................................27

*Sugar Busters LLC v. Brennan*,
177 F.3d 258 (5th Cir. 1999) ...............................................................................23

*T.B. Harms Co. v. Eliscu*,
339 F.2d 823 (2d Cir. 1964) ................................................................................39

*Toledo v. Jackson*,
485 F.3d 836 (6th Cir. 2007) ...............................................................................14

*Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*,
495 F.3d 266 (6th Cir. 2007) ...............................................................................48

*Trump v. New York*,
592 U.S. 125 (2020)..............................................................................................31

*United Specialty Ins. Co. v. Cole's Place, Inc.*,
936 F.3d 386 (6th Cir. 2019) ...............................................................................37

viii

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009).............................................................................17

*W. World Ins. Co. v. Hoey*,
  773 F.3d 755 (6th Cir. 2014) ....................................................35, 46

*Warner Bros. Enter., Inc. v. X One X Prods.*,
  840 F.3d 971 (8th Cir. 2016) ..............................................................23

*Watson v. Cartee*,
  817 F.3d 299 (6th Cir. 2016) ..............................................................22

*Weisberg v. Dep't of Justice*,
  631 F.2d 824 (D.C. Cir. 1980).............................................................50

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)....................................................12, 36, 37, 38

*Wombles v. Cabinet for Health & Fam. Servs.*,
  2008 WL 4443019 (E.D. Ky. Sept. 26, 2008) ....................................47

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,
  16 F. App'x 433 (6th Cir. 2001) .........................................................37

## Statutes

5 U.S.C. § 552(b)(3)...............................................................................50

12 U.S.C. § 38........................................................................................28

17 U.S.C. § 106........................................................................................4

28 U.S.C. § 1331................................................................8, 14, 15, 28

28 U.S.C. § 1338..................................................................8, 14, 15

28 U.S.C. § 2201...............................................................................*passim*

29 U.S.C. § 185.....................................................................................28

29 U.S.C. §§ 1001-1461 .......................................................................28

KRS 61.870....................................................................................*passim*

KRS 61.871 ................................................................................................47

KRS 61.872(2)(a) .........................................................................................3

KRS 61.878 ...........................................................................................*passim*

KRS 61.880(5)(b) ....................................................................................5, 51

KRS 61.882 ............................................................................................4, 5

## Other Authorities

10B FED. PRAC. & PROC. CIV. § 2758 (4th ed.) .......................................................46

Fed. R. Civ. P. 12 ......................................................................................12

Ky. Op. Atty. Gen. 09-ORD-079, 2009 WL 1546078 (May 19, 2009) ........4, 24, 41

## ORAL ARGUMENT STATEMENT

Appellee NCS Pearson, Inc. ("Pearson") does not believe oral argument is necessary. The District Court's decision was compelled by the straightforward application of well-established legal principles, like the well-pleaded complaint rule, and the ultimate decision to decline jurisdiction, even if the minimum jurisdictional requirements were present, was well within the District Court's broad discretion under the Declaratory Judgment Act. Nonetheless, should the Court conclude oral argument would be helpful in resolving this appeal, Pearson would welcome the opportunity to address any questions the Court may have.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 because it is an appeal from a final decision of the Western District of Kentucky. However, the District Court correctly dismissed the suit for lack of subject matter jurisdiction, because the Plaintiff's claim does not arise under federal law and there is no diversity of citizenship, and alternatively properly exercised its discretion to decline jurisdiction under the Declaratory Judgment Act.

## STATEMENT OF ISSUES

This appeal presents the following questions:

I.  Whether the District Court correctly concluded that it lacked federal-question subject matter jurisdiction, because Plaintiff's claim for relief arises solely under state law, and federal jurisdiction does not exist merely to adjudicate a federal law issue that is, at most, potentially relevant to a state-law defense to her claim?

II.  Whether the District Court further lacked subject matter jurisdiction because Plaintiff's declaratory judgment claim is unripe?

III.  Whether the District Court abused its discretion by alternatively declining to exercise jurisdiction under the Declaratory Judgment Act, given that resolution of Plaintiff's hypothetical "fair use" defense would not resolve the controversy and would require the federal courts to interject themselves into, and direct Kentucky courts' resolution of, state law Open Records Act decisions within exclusive state jurisdiction?

# STATEMENT OF THE CASE

This Court is being asked to determine whether a federal district court can (or should) exercise federal question jurisdiction to, at most, resolve part of an exemption from a Kentucky open records request. The answer should be obvious: it cannot and should not. Like many states, Kentucky grants residents certain statutory rights to inspect and obtain copies of public records. Kentucky statutory law also establishes limitations and exclusions from disclosure for certain types of records, and establishes an exclusive state-law administrative and judicial appellate scheme for review of denied requests.

Plaintiff/Appellant, Miranda Stovall, submitted an open records request to Jefferson County Public Schools ("JCPS"), a Kentucky public school district. JCPS relied on a state-law exemption to deny her request due to the copyright status of the requested materials. Stovall then bypassed the exclusive state-law appellate remedies available to her, and instead filed a declaratory judgment action in federal court, seeking a declaration concerning a question of federal law (her purported intended "fair use" of the materials) that she believed was relevant to the state-law open records exemption.

The federal declaration that Stovall sought would either direct a Kentucky court on which records must be disclosed under Kentucky law, or it would do nothing because the issue she raises is not actually relevant to the state-law

exemption and because a Kentucky court could eventually deny her request based on other state-law grounds anyway. Congress's grant of federal question jurisdiction and creation of the declaratory judgment remedy do not countenance either outcome. Stovall's Complaint arises out of a Kentucky law dispute between a Kentucky resident and a Kentucky agency. The District Court correctly determined that federal courts are not granted subject matter jurisdiction over such a dispute and reasonably declined in the alternative to exercise its discretionary jurisdiction over her declaratory judgment claim. This Court should affirm.

\*\*\*\*

Miranda Stovall is the co-founder of a national "parental rights" organization and mother of children who attend JCPS schools. (DN 1, Page ID# 2, Compl. ¶ 2). In January of 2023, Stovall learned that JCPS planned to administer a mental-health survey to middle-school and high-school students. (*Id.*, Page ID# 4, ¶ 27). Appellee NCS Pearson, Inc. ("Pearson") had developed the survey and licensed it to JCPS (the "Survey"). (*Id.*, Page ID# 2, ¶ 8; *see* DN 12, Page ID# 57, Def.'s Mot. Dismiss at 4). Pearson is a global leader in the development of such research-based instruments, which are used by educational institutions and professionals worldwide. JCPS is one of Pearson's many public school clients. (*Id.*, Page ID# 54-55, 57).

The specific survey that JCPS planned to administer comprised Pearson's "BESS Social and Emotional Screener," "Mental Health Screener," and "Screener Questionnaire." (DN 1, Page ID# 5, Compl. ¶ 29). Pearson's clinicians developed each screener to be used only by professionals in an educational or clinical setting. (DN 12, Page ID# 57, Def.'s Mot. Dismiss at 4). Pearson takes significant steps, including establishing copyright protection, to ensure that its materials are utilized only for their intended purpose and not publicly disseminated. (*Id.*). As a result, the observance of confidentiality terms is a requirement that Pearson imposes on all its partners, including JCPS. (*Id.*).

On January 17, 2023, Stovall sent JCPS an open records request (the "ORR") for a "full digital copy" of the Survey. (DN 1, Page ID# 5, Compl. ¶ 29). Stovall routinely submits open records requests to JCPS through Kentucky's Open Records Act, KRS 61.870 *et seq*. ("KORA"). (*Id.*, Page ID# 2, ¶ 5). Stovall allegedly intends to use the records she requested to engage in "public discussion, criticism, comments, and news reporting" and to "educat[e] parents to advocate for their children." (*Id.*, Page ID# 2, 5, ¶¶ 2, 28).

Under KORA, Stovall "ha[s] the right to inspect public records." KRS 61.872(2)(a). However, KORA also includes categories of records that "are excluded from" disclosure. KRS 61.878(1)(a)–(s). In response to a request, an agency must either disclose the records or explain why they fall within one of

those exceptions. KRS 61.882(3). Among other exceptions, a public agency is not required to produce records "the disclosure of which is prohibited by federal law." KRS 61.878(1)(k).

Kentucky, like many states with similar open records law exceptions, has interpreted this exception to prohibit copying and distribution (though not necessarily inspection) of copyrighted records, given copyright owners' exclusive rights under the Copyright Act to "reproduce" or "distribute" any copyrighted work. 17 U.S.C. § 106(1) & (3). *See, e.g*., Ky. Op. Atty. Gen. 09-ORD-079, 2009 WL 1546078 (May 19, 2009).

In applying this exemption, or any ORA exemption, the requester's intended use of requested materials has no bearing on the application of an exemption. *Id*. at n.7. A requester's assurance that, after receiving the material, they intend to only use it in a way that would constitute "fair use" does not enter into the equation, since the legality of a person's eventual use of materials already in their possession is a separate question from the agency's right to reproduce it or the requester's right to receive it. *Id*. at *6.

Accordingly, JCPS's assistant general counsel, Amanda Herzog, denied Stovall's request to produce copies of the Survey, citing KRS 61.878(1)(k) and the Survey's copyrighted status:

> We are not able to provide you with this record. This screener is the copyrighted intellectual property of Pearson. KRS 61.878(1)(k)

4

prohibits from disclosure "All public records or information the disclosure of which is prohibited by federal law or regulation[.]" Under this law, we are not able to provide you with copies of copyrighted materials.

(DN 1, Page ID# 5, Compl. ¶ 31). Nonetheless, JCPS offered to allow Stovall to inspect the Survey in person and report on the information that way. (*Id.*, ¶ 33).

Stovall refused the offer to inspect the Survey, however, claiming she could not accomplish her goal of "educating parents to advocate for their children" without physical "proof" of the Survey's content. (*Id.*, Page ID# 2, 6, ¶¶ 2, 36).

Under KORA, a petitioner, like Stovall, may appeal an agency's denial to the Kentucky Attorney General and if the Attorney General upholds the denial, to the circuit court of the county where the public records are maintained. KRS 61.880(5)(b); 61.882(1). Alternatively, a petitioner may bypass Attorney General review and simply file an original action in Kentucky circuit court. KRS 61.882(2); 61.880(5)(a), (b). Instead of appealing JCPS's denial, however, Stovall filed this federal lawsuit against JCPS, JCPS Superintendent Marty Pollio, Herzog, and Pearson. (*See generally* DN 1, Compl.).

In her Complaint, Stovall requested a declaration "that providing copies of the surveys in response to a public records request for non-commercial purposes like parental participation in the school system, criticism, comment, and news reporting is a fair use of the copyrighted material and thus non-infringing." (*Id.*, Page ID# 3, ¶ 14). Stovall stated that her "injury is caused by Defendant JCPS's

refusal to provide copies" of the Survey and that her injury "would be remedied by a declaratory judgment that providing her with copies of the survey is a fair use and thus not an infringement of Defendant Pearson's copyright." (*Id.*, Page ID# 6, ¶¶ 40–41). She alleged that there is a "real and actual controversy" among the parties regarding "whether Defendant JCPS's provision of the requested surveys to Mrs. Stovall would infringe Defendant Pearson's copyright." (*Id.* ¶ 43).

Pearson moved to dismiss for lack of subject matter jurisdiction. (DN 12, Mot. Dismiss). Pearson first argued that Stovall's Complaint did not establish federal-question jurisdiction. (*Id.*, Page ID# 59). While Stovall's declaration nominally sought a judgment that JCPS's disclosure, or Stovall's eventual use, of the Survey constituted a fair use of Pearson's copyright, her declaration only sought to invalidate JCPS's exemption under KORA and therefore arose under Kentucky law. (*Id.*, Page ID# 59-62). Pearson also argued that, to the extent Stovall could state a claim to assert a defense to an infringement action arising under the Copyright Act, such a claim was unripe because Stovall has not—and cannot—allege that she faces any imminent threat of copyright-infringement liability. (*Id.*, Page ID# 62-64). Pearson lastly argued that the District Court should, at minimum, exercise its discretion to decline jurisdiction over Stovall's declaratory judgment claim. (*Id.*, Page ID# 64-70).

The District Court granted Pearson's motion. (DN 23, Page ID# 138, Memo. Op. & Order). It first found that Stovall's Complaint did not arise under federal law because her declaration at most sought to invalidate an anticipated state-law defense to a state-law open records claim, and the fact that this anticipated defense might somehow implicate questions of federal law does not create federal question jurisdiction. (*Id.*, Page ID# 141-142).

Alternatively, the District Court held that even if Stovall's declaratory judgment claim did arise under federal law, it would exercise its discretion to decline jurisdiction under the Declaratory Judgment Act pursuant to the factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp*., 746 F.2d 323 (6th Cir. 1984). The court explained the declaration would not "settle the controversy" or "clarify[] the legal relations in issue" because Stovall would still need to file and pursue an open records appeal in state court, which the requested declaration would not resolve. (DN 23, Page ID# 143, Memo. Op. Order at 6). The court also emphasized that exercising jurisdiction over Stovall's action would "increase friction with the Kentucky state court and improperly encroach on state jurisdiction, because although disguised as a federal question, Stovall's action is an attempt to bypass a state court open records appeal." (*Id*., Page ID# 144).

This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court correctly determined that it did not have subject matter jurisdiction over Stovall's suit. Federal question jurisdiction, whether under the Copyright Act or any other law, exists only where federal law creates the plaintiff's cause of action. And under the well-pleaded complaint rule, federal question jurisdiction does not exist merely because a federal defense is at issue, even if the parties agree the defense is the only issue in dispute. Here, Stovall's alleged right to obtain copies of the Survey is created and defined solely by state law—namely, KORA—and her suit seeks only to adjudicate a state-law defense to production of the records under KORA.

Other courts addressing similar actions have agreed that declaratory claims like Stovall's relate solely to potential defenses to state-law claims, and do not arise under federal law for purposes of 28 U.S.C. § 1331 or § 1338(a).

It makes no difference that Stovall's suit is brought under the Declaratory Judgment Act. It is true that in the declaratory judgment context, jurisdiction depends upon whether federal question jurisdiction would exist for a hypothetical coercive suit brought by the declaratory action defendants against the declaratory action plaintiff.

But here, Stovall's Complaint does not seek relief to negate any coercive federal-law copyright infringement claim threatened by the declaratory judgment

defendants. Stovall's Complaint primarily seeks relief against JCPS, as it must, because JCPS is the party from whom Stovall seeks production of the Survey under KORA. However, JCPS is not a copyright holder, and has no potential federal copyright infringement claim against Stovall. Neither do Defendants Polio or Herzog, who—like JCPS—are joined in this action to enable Stovall to enforce her asserted state-law KORA claims, not to defend against any hypothetical coercive federal claims.

To the extent Stovall is seeking to negate JCPS's potential copyright liability to Pearson, she does not have standing to assert JCPS's alleged fair use rights. Fair use is an affirmative defense, which belongs to JCPS to assert or waive as it chooses.

Nor can Stovall base federal jurisdiction on a hypothetical infringement claim by Pearson against her. Her Complaint does not allege Pearson has threatened any infringement suit against her. An adjudication of Stovall's "fair use" defense against Pearson also would not redress her alleged injury of being denied copies of the Survey, since Kentucky law does not consider a requester's intended use when determining whether an exception to KORA applies and, in any event, a declaration of Stovall's intended "fair use" would not necessarily resolve JCPS's legal authority to copy and distribute the Survey.

Stovall similarly cannot rely upon the "substantial federal question" doctrine, or any federal preemption basis, to establish jurisdiction. "Fair use" is not an element of Stovall's right of action under KORA, so the "substantial federal question" doctrine does not apply. And Stovall is not asserting any cause of action created by the Copyright Act that might completely preempt her KORA claim, or any claim implied under the Supremacy Clause to protect the exercise of federal rights, so her preemption-based arguments also fail.

Thus, Stovall's claim does not arise under federal law, and subject matter jurisdiction is lacking.

Alternatively, even if adjudication of Stovall's hypothetical copyright infringement liability did state a claim arising under federal law, such a claim would be unripe. Stovall has not alleged that any infringement suit against her is imminent or certainly impending. Moreover, Stovall's vague allegations about her intended future "fair use" of the Survey, if she were to receive a copy of it, do not provide a sufficient factual basis to definitively adjudicate her hypothetical "fair use" defense. The District Court may be affirmed on this basis as well.

Finally, whether or not the minimum requirements for federal jurisdiction are present here, the District Court nonetheless did not abuse its broad discretion under the Declaratory Judgment Act to decline jurisdiction over Stovall's

declaratory judgment claim pursuant to the factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984).

The District Court correctly determined that adjudication of Stovall's declaratory judgment claim would not conclusively settle the controversy or meaningfully clarify the parties' legal relations. A declaration of Stovall's "fair use" would not resolve her entitlement to a copy of the Survey, because Kentucky law does not consider a requester's intended use when determining the applicability of an exception under KORA. And, even if a declaratory judgment did resolve the application of KRS 61.878(1)(k)'s "prohibited by federal law" exception, a denial of her request could still be upheld under another KORA exception.

Moreover, Stovall's federal suit was plainly filed to bypass the state appeal process established by KORA, and to obtain a favorable ruling from a federal court before her appeal is presented in the state forum. Adjudicating Stovall's federal suit would necessarily interject a federal court into an area of exclusive state jurisdiction, and require the District Court to dictate state courts' adjudication of rights created and defined solely by state law. These considerations also weigh strongly against the exercise of jurisdiction, and the District Court should be affirmed on this basis as well.

## ARGUMENT

### I.    Standard of Review.

This Court reviews the District Court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) *de novo*. *Patton v. Fitzhugh*, 131 F.4th 383, 391 (6th Cir. 2025). "Where subject matter jurisdiction is challenged pursuant to [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). Once the court determines that it lacks subject matter jurisdiction, "the court must dismiss the action," Fed. R. Civ. P. 12(h)(3), "without addressing the merits." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012).

Moreover, in a case brought under the Declaratory Judgment Act, the exercise of jurisdiction is "not mandatory," even when the minimum requirements for jurisdiction have been met. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004). The Act gives "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Accordingly, this Court reviews the District Court's decision whether to exercise jurisdiction under the Act only for abuse of discretion. *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 796 (6th Cir. 2022). Under this standard, this Court will "reverse only if

the district court 'relie[d] on clearly erroneous findings of fact, use[d] an erroneous legal standard, or improperly applie[d] the law.'" *Id.*

Stovall's appeal cannot prevail under either standard. Stovall's claim does not arise under federal law, and her claim is unripe. Regardless, the District Court properly exercised its discretion to decline jurisdiction under the Declaratory Judgment Act. This Court should affirm.

## II. The District Court correctly held that Stovall's declaration did not arise under federal law.

The District Court lacked subject matter jurisdiction over Stovall's Complaint. Stovall's asserted right to JCPS's production of copies of the Survey arises solely from, and is entirely defined by, state law—namely KORA. No federal law creates any right for her to receive a copy of the Survey.  Stovall's requested declaratory judgment that her intended use of the Survey would be a non-infringing "fair use" (if she were to receive it) is nothing more than an attempt to address federal-law issues that may or may not bear on an anticipated state-law defense to her state-court open records appeal, which does not establish federal question jurisdiction.

Stovall's Complaint is not seeking protection from any hypothetical federal law infringement suit by any of the Defendants in this action. Indeed, the primary Defendant from whom Stovall actually seeks relief—JCPS—is not a copyright holder, and could not bring such a claim. And Pearson has no imminent

infringement claim threatened against her, since she does not even currently possess the Survey and JCPS has denied her ORR. Stovall's requested declaratory judgment is sought solely to facilitate the exercise of her rights under state open records law, not to defend against any anticipated federal claim. The Court should affirm the District Court's threshold determination that it lacked subject matter jurisdiction over Stovall's Complaint.

## A. Under the well-pleaded complaint rule, Stovall's suit merely seeks to adjudicate a defense to a claim created by state law, which is insufficient for federal question jurisdiction.

Stovall brought her action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA"). (DN 1, Page ID# 4, Compl. ¶ 22). A declaration under the DJA "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937); 28 U.S.C.A. § 2201 (entitled "Creation of remedy"). A complaint seeking a declaration under the DJA must still present "an independent basis for federal subject matter jurisdiction." *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007).

To establish federal jurisdiction, Stovall relies on 28 U.S.C. § 1331 and § 1338(a), which confer jurisdiction over claims that "aris[e] under" federal law, and the Copyright Act specifically. But Stovall's Complaint does not allege any claim that "aris[es] under" any federal law. *See Gunn v. Minton*, 568 U.S. 251, 257 (2013) ("arising under" language in both 28 U.S.C §§ 1331 and 1338(a) are

interpreted "identically," by applying the Court's "§1331 and 1338(a) precedents interchangeably.").

To determine whether an action arises under federal law, the Court must apply "the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under this rule, a claim arises under federal law only when federal law creates the plaintiff's cause of action, or—in a "slim category" of cases—where the claim presents a "substantial question of federal law" as a necessary element of the plaintiff's state-law claim. *Est. of Cornell v. Bayview Loan Serv., LLC,* 908 F.3d 1008, 1014 (6th Cir. 2018).

Critically, the fact that a defense to a state-law claim may raise federal-law issues is not sufficient to establish jurisdiction. Rather, the Court must examine "the 'well pleaded' allegations of the complaint and ignore potential defenses…." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). This is true "even if both parties admit that the defense is the only question truly at issue in the case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (applying 28 U.S.C. § 1338(a)'s grant of exclusive jurisdiction).

This standard applies with no less force when the Copyright Act is implicated, notwithstanding federal courts' exclusive jurisdiction to hear claims

arising under that Act. Indeed, this Court has long recognized that "an action does not 'arise under' the federal copyright laws merely because it relates to a product that is the subject of a copyright." *Severe Records, LLC v. Rich*, 658 F.3d 571, 581 (6th Cir. 2011). Federal courts' exclusive jurisdiction over copyright, patents, and similar matters only extends to causes of action that are created by federal law or necessarily raise a substantial federal question as an element of the claim; it does not require federal courts to exercise jurisdiction merely because resolution of a state-law claim may incidentally involve some application or interpretation of federal copyright law. *Gunn*, 568 U.S. at 264. Thus, even for declarations that relate to the Copyright Act or similar areas of exclusive federal jurisdiction, the Court must still apply the well-pleaded complaint rule and ignore any copyright-related defenses. *Christianson*, 486 U.S. at 809 ("[A] case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law.").

Stovall's Complaint does not satisfy the well-pleaded complaint rule. The federal question presented by her action—whether Stovall's use (or JCPS's production) of the Survey is a non-infringing fair use—is, at most, only relevant to JCPS's potential defense to her cause of action under KORA, which arises solely under state law. In her Complaint, Stovall alleged that her "injury" is the "denial of her request for copies of the surveys," which she claimed was "caused by Defendant JCPS's refusal to provide copies, citing copyright protection." (DN 1,

Page ID# 6, Compl. ¶¶ 39–40). Thus, it is apparent that Stovall only seeks her requested declaration to defeat JCPS's state-law defense to her claim for production of records under KORA.

That is insufficient. A Complaint does not arise under federal law simply when "the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (cleaned up).[1] *Cf. Am. Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260 (1916) ("The fact that the [defamation] justification [defense] may involve the validity and infringement of a patent is no more material to the question under what law the suit is brought than it would be in an action of contract.").

Other courts addressing efforts to adjudicate similar exceptions to state open records laws have reached this same conclusion. *See, e.g*., *Bd. of Chosen Freeholders of Cnty. of Burlington v. Tombs*, 215 F. App'x 80 (3rd Cir. 2006); *Courier-Journal, Inc. v. Cabinet for Health & Fam. Servs.*, 2011 WL 2173921, at *1 (E.D. Ky. June 1, 2011). *Accord State, Dep't of Health & Rehab. Servs. v. Southpointe Pharm*., 636 So.2d 1377, 1380 (Fla. Ct. App. 1994) ("The present case arises under the [Florida] public records law…. [C]opyright law is not an essential

---

[1] *Superseded by statute on other grounds, Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 644 (Fed. Cir. 2015).

element of [the] claim" and "a copyright law defense ought not defeat state court jurisdiction.").

In *Tombs*, for example, a county brought a declaratory judgment action in federal court, seeking a declaration that the Copyright Act precluded a state open records request for free copies of sophisticated maps created and maintained by the county. 215 F. App'x 80. The Third Circuit held that the claim did not arise under federal law because "[f]ederal copyright law is not an essential element of Tombs' OPRA claim" and "[t]he Board's exclusive rights under copyright law arise only as a defense to Tombs' claim." *Id*. at 82.

Similarly, in the *Courier-Journal* case, a newspaper sued a Kentucky state agency under KORA seeking access to information about cases involving fatalities to children in foster care. 2011 WL 2173921, at *1. The agency denied the request, in part, on the grounds that the federal Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101, *et seq.* ("CAPTA") mandated confidentiality. *Id.* The court held that the agency's reliance on CAPTA as a basis for denying the request did not create federal jurisdiction for purposes of removal, because "to the extent CAPTA would provide an exception to the general rule [of disclosure], it is best classified as a *defense*." *Id.* at *4 (emphasis added). Thus, "any assertions regarding CAPTA in the Newspapers' complaint merely anticipate defenses" and as a result, "are not a part of the plaintiffs' 'well-pleaded claims.'" *Id.*

The same is true here. Stovall's asserted right to production of the Survey is solely a creation of Kentucky statutory law. Stovall only relies on her fair use of the Survey to try to invalidate JCPS's anticipated reliance on a state-law exemption to deny her ORR. The Copyright Act does not create any part of her cause of action. "The most one can say is that a question of federal law is lurking in the background[.]" *Gully v. First Nat. Bank*, 299 U.S. 109, 117 (1936). Stovall cannot establish subject matter jurisdiction simply by "go[ing] to federal court to begin [the] federal-law defense before the state court begins the case under state law." *Pub. Serv. Comm'n of Utah v. Wycoff Co*., 344 U.S. 237, 248 (1952).

### B.   Stovall's declaratory judgment claim is not the converse of any coercive action that would arise under federal law.

It is true that "[s]ome fine-tuning of the well-pleaded complaint rule is necessary for declaratory judgment actions." *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020). Because a declaratory judgment claim asks for advance adjudication of an imminent claim against the plaintiff, "[i]n the declaratory-judgment context, whether a federal question exists is determined by reference to a hypothetical non-declaratory suit (*i.e.*, a suit for coercive relief) between the same parties." *City of Cleveland*, 695 F.3d at 554.

Under this reversed framework, federal courts possess jurisdiction over "declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a

federal question." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 19 (1983). The court must "look to the anticipated claim underlying the request for declaratory relief" and ask whether the "anticipated claim 'arise[s] under federal law[.]'" *Miller*, 949 F.3d at 991 (citation omitted).

But this fine tuning does not save Stovall's suit. The only "anticipated claim underlying" Stovall's declaration is her own ORR and subsequent appeal under KORA—both of which arise under Kentucky law. Stovall's Complaint thoroughly details the facts giving rise to her lawsuit and none identify any potential copyright-infringement lawsuit threatened or expected to be brought against her. (DN 1, Page ID# 4-6, Compl. ¶¶ 27–38). The only events precipitating this action were Stovall's ORR seeking Pearson's Surveys and JCPS's denial under KORA's exemption for disclosures that are "prohibited by federal law." (*Id.*, Page ID# 5, ¶¶ 29–33). The next logical step would have been to appeal under KORA, but instead Stovall sought a federal declaration concerning the fair-use doctrine.

Stovall's declaratory claim does not seek a straightforward declaration of non-liability for any anticipated federal claim. Stovall's primary claim for relief in this action is ***against JCPS***, which is not the copyright holder and indisputably has no potential coercive federal law claims against Stovall. Stovall's Complaint asserts that her "injury is caused by ***Defendant JCPS's refusal*** to provide copies"

of the Survey, (*Id*., Page ID# 6, ¶ 40 (emphasis added)), and her sole claim for relief requests a declaration that "***Defendant JCPS providing the surveys*** to her is a fair use that does not infringe Defendant Pearson's copyright." (*Id*., Page ID# 7, ¶ 44 (emphasis added)). Thus, Stovall is plainly seeking to litigate the legality of ***JCPS's conduct*** under KORA. Indeed, her suit cannot go forward without JCPS, because JCPS is the party from whom she truly seeks relief in the form of production of the Survey.

Stovall has not identified any coercive action that ***JCPS***, "the declaratory judgment defendant," could bring against her, much less one that would "necessarily present a federal question." *Franchise Tax Bd.*, 463 U.S. at 19. Nor does Stovall hypothesize or allege any coercive claim that could be brought against her by Defendants Polio or Herzog. Like JCPS, these Defendants are named solely so she can enforce her alleged state-law open records rights against them, not to negate any coercive federal claim these defendants may assert against her.

Accordingly, there is no "hypothetical non-declaratory suit . . . between the ***same parties***" that would arise under federal law. *City of Cleveland*, 695 F.3d at 554 (emphasis added). *See also, e.g.*, *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023) ("Since it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must

have been a proper party had the defendant brought suit on the underlying cause of action." (quotation omitted)); *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014) (same).

Similarly, to the extent Stovall is seeking a declaration that the potential conduct of "Defendant JCPS providing the surveys to her is a fair use that does not infringe Defendant Pearson's copyright," (DN 1, Page ID# 7, Compl., ¶ 44), that allegation—at the very most—invokes a potential hypothetical coercive action *between the two declaratory judgment defendants*, *not* any coercive action by any of the declaratory judgment defendants *against Stovall*, the declaratory judgment plaintiff. *Cf. Franchise Tax Bd.*, 463 U.S. at 19.

Stovall has no standing to assert a declaratory judgment claim for fair use on behalf of JCPS against Pearson, so the possibility of an infringement claim by Pearson against JCPS—even if such a possibility existed—cannot confer federal question jurisdiction over Pearson's suit. *E.g.*, *Watson v. Cartee*, 817 F.3d 299, 305 (6th Cir. 2016); *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) ("Generally, a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (cleaned up, quotation omitted). Notably, "fair use" is an affirmative defense,

which is waivable by the party holding it.[2] Stovall cannot bring a declaratory judgment action to adjudicate another party's fair use defense that that party has not asserted on its own behalf.

Stovall's invocation of a hypothetical infringement action that might be brought by Pearson against her, based on her alleged "fair use" of the Survey, fares no better. As discussed in greater detail below, a declaratory judgment about such a claim is patently unripe, as Stovall has not currently made—and cannot yet make—any use of Pearson's Survey, fair or otherwise. *See* pp. 29-33, *infra*. But the Court need not even get that far, because the Complaint makes no allegations whatsoever about any potential—much less threatened—infringement action by Pearson, whether against Stovall, JCPS, or any other party.

Nor has Stovall offered any explanation of how a declaration against Pearson that her intended use of the Survey is a "fair use" would redress her claim against JCPS. *E.g*., *Sierra Club v. Tenn. Dep't of Env't & Conservation*, 133 F.4th 661, 672 (6th Cir. 2025) ("If that relief does nothing to redress the alleged injury, a court could do nothing more than issue a jurisdiction-less 'advisory opinion.'" (cleaned up)). As noted above, Kentucky—like many states—does not consider a

---

[2] *Warner Bros. Enter., Inc. v. X One X Prods*., 840 F.3d 971, 980 (8th Cir. 2016); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 271 (5th Cir. 1999); *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 268 (2d Cir. 1995).

requester's intended purpose for requested materials when determining the applicability of an exclusion under KORA. Ky. Op. Atty. Gen. 09-ORD-079, 2009 WL 1546078. *Accord Nat'l Council of Teachers Quality, Inc. v. Curators of Univ. of Mo*., 446 S.W.3d 723, 730 (Mo. Ct. App. 2014) ("A Sunshine law request is made and must be responded to before the actual use of the requested record occurs"). Moreover, a declaration of Stovall's non-liability to Pearson—the only claim for which Stovall remotely could assert standing—would not resolve the legal relations between Pearson and JCPS, since JCPS's production and Stovall's use are distinct issues. Ky. Op. Atty. Gen. 09-ORD-079, 2009 WL 1546078, at \*6. Thus, any advance determination of Stovall's "fair use" would not even address JCPS's grounds for declining to copy and distribute the Survey.

Accordingly, Stovall grossly oversimplifies her claim by positing her suit as the mere converse of an ordinary federal-law copyright infringement action. No aspect of this case bears any relation to the kind of defensive declaratory judgment actions typically brought under the Copyright Act, where a declaratory defendant has threatened an infringement suit against the plaintiff for her intended or actual use of copyrighted works in the plaintiff's possession. *Cf. Severe Records, LLC*, 658 F.3d at 582.

Rather, Stovall's claim necessarily seeks to resolve a web of legal relationships between various parties that are not relevant to protect against any

threatened infringement action, but instead are sought solely in an effort to

establish Stovall's claimed right to production of the documents under state law.

That does not establish federal jurisdiction, whether under the "fine-tuned"

standards applicable to declaratory judgment actions or otherwise.

### C. Stovall's newly-asserted "substantial federal question" and preemption-based theories do not establish federal jurisdiction.

For the first time on appeal, Stovall contends that her Complaint satisfies the

well-pleaded complaint rule for two additional reasons. She asserts in a footnote:

> Even if the Court concludes that Mrs. Stovall could have brought this question in a Kentucky ORA case to state court, federal courts would still possess subject matter jurisdiction . . . because (1) the right to relief turns on a substantial federal question and (2) copyright claims are preempted.

(App. Br. at 19 n.3). Stovall never raised these arguments below and only

passingly mentions them on appeal. Her new and perfunctory arguments are

therefore forfeited. *Cash-Darling v. Recycling Equip., Inc.*, 62 F.4th 969, 975 (6th

Cir. 2023) ("As a general rule in this Circuit, arguments raised for the first time on

appeal are forfeited . . . ."); *Porter v. Bondi*, 127 F.4th 993, 999 (6th Cir. 2025)

(issued raised "in a perfunctory manner, unaccompanied by some effort at

developed argumentation" are forfeited). But, regardless, Stovall is wrong.

As for her "substantial federal question" theory, Stovall's (or JCPS's)

potential "fair use" of Pearson's copyright is not a necessary element of Stovall's

right to enforce her ORR. Where, as here, state law "create[s] the cause of action,"

25

a plaintiff may only establish federal-question jurisdiction when a substantial question of federal law is a "necessary element of one of the well-pleaded state law claims." *Franchise Tax Bd.*, 463 U.S. at 13. But again, the need to negate a potential defense to a state-law claim is not a "necessary element" of the underlying claim for purposes of federal question jurisdiction. *Id.*

Under KORA, Pearson's copyright—including any potential fair use of Pearson's copyright—merely concerns an exemption to KORA's presumption of disclosure; therefore, the fair use doctrine would be (if anything) a sub-part of that state-law defense. *Cf. Atwood v. Casey Cnty.*, 137 S.W.2d 1079, 1080 (Ky. 1940) ("[I]f the exception or proviso gives the defendant exemption from liability and is in a clause separate from the clause giving the cause of action, then it is a matter of defense and must be pleaded by the defendant."). Thus, any party's potential fair use of Pearson's copyright is not a "necessary element" of Stovall's right to relief under KORA and cannot establish federal question jurisdiction. *E.g.*, *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 476 (6th Cir. 2008) ("[T]hat at most would raise a defense to this action; it would not make the orders an essential element of the claim."); *Tombs*, 215 F. App'x at 82 ("Federal copyright law is not an essential

element of Tombs' [open records] claim. The Board's exclusive rights under copyright law arise only as a defense to Tombs' claim.").[3]

As for her vague preemption argument, the Copyright Act certainly does not completely preempt KORA so as to convert an open records request for copyrighted materials into a copyright-infringement lawsuit. "[T]he congressional intent necessary [for] … complete preemption is expressed through the creation of a parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule." *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 260 (6th Cir. 1996). *See also, e.g.*, *Beneficial Nat'l Bank*, 539 U.S. at 8 (complete preemption requires the federal statute "provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action."). The Copyright Act does not "provide[] the exclusive cause of action" or the accompanying "procedures and remedies" for the disclosure of copyrighted public records. *E.g.*, *Tombs*, 215 F. App'x at 82 ("Federal copyright law does not create an exclusive

---

[3] Nor would any federal-law issue be "substantial" for purposes of this doctrine, which focuses on "the importance of the issue to the federal system as a whole," rather than the issue's importance to the parties in this particular case. *Gunn*, 588 U.S. at 260 (emphasizing state-court resolution of patent-law issues necessary to resolve malpractice case would not meaningfully impair development of uniform federal law).

cause of action for access to public records and does not set forth procedures and remedies governing such actions.").[4]

To be sure, as Stovall implies through a fleeting citation, "[f]ederal courts have jurisdiction under § 1331 over suits to enjoin state officials from interfering with federal rights by enforcing state laws that are preempted by federal law." *City of Cleveland*, 695 F.3d at 554 (quotation omitted) (cited by App. Br. at 19 n.3). But that is a limited and unique exception to the well-pleaded complaint rule that is recognized because, "[d]espite the arguable disharmony" of allowing a preemption defense to establish federal jurisdiction, federal courts possess subject matter jurisdiction through a separate, equitable "cause of action [that] is implied under the Supremacy Clause." *Id.* at 554, 556.

Stovall's claim does not seek to enjoin any state action that interferes with a preemptive federal right. Stovall does not allege that KORA is preempted by the Copyright Act, and Stovall is not seeking to protect any right conferred upon her by the Copyright Act from being impaired by state officials. Stovall's claim is the opposite. Stovall is seeking to *avoid* the Copyright Act's alleged interference with

---

[4] As has often been recognized, the United States Supreme Court has found complete preemption under only three statutes: Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975, 29 U.S.C. §§ 1001-1461; and the National Bank Act, 12 U.S.C. § 38. *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 564 (6th Cir. 2007).

her ***state-law*** right to receive copies of public records. Thus, Stovall's Complaint clearly does not assert any equitable claims implied under the Supremacy Clause that could fall within this narrow band of federal jurisdiction.[5]

Thus, the District Court correctly held that Stovall's Complaint did not arise under federal law. This Court should affirm.

## III. Alternatively, the District Court should be affirmed because Stovall's declaratory judgment claim is unripe.

Even if Stovall's asserted need to establish "fair use" as a defense to an anticipated copyright infringement action were sufficient to identify a federal claim under the Declaratory Judgment Act, that claim is unripe. Stovall repeatedly argues that, because Pearson could bring a hypothetical, coercive copyright-infringement claim against her under the Copyright Act, her fair-use defense to such a claim arises under federal law, as well. (App. Br. at 5, 6, 10, 13–15, 17). The problem with Stovall's argument is—as Pearson explained below—"at this point, there is no such dispute and not even a threat of such a dispute[.]" (DN 12, Page ID# 64, Def.'s Mot. Dismiss at 11 n.6).

_____

[5] For the same reasons, Stovall is not alleging a claim arising under any preemptive federal law "right to 'control the education' of her children," either. (*See* App. Br. at 2 (citation omitted)). Stovall's Complaint does not allege this asserted federal right grants her an independent affirmative right to obtain copies of the Survey. Such a right, if it exists, would arise only under KORA.

Stovall cannot obtain a declaration of her "fair use" before there has been any threat—or even hint—of an infringement suit, and before she has made any use of the Survey at all. Put simply, the facts necessary to adjudicate any fair use defense have not yet occurred. While the District Court did not need to address this argument, this Court may affirm "on any ground supported by the record." *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 423 (6th Cir. 2016) (quotation omitted).

Under the Copyright Act, "fair use is an affirmative defense" to a copyright-infringement claim. *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 590 (1994). When a petitioner seeks a declaratory judgment on an affirmative defense, like fair use, she must show there is an "actual controversy," 28 U.S.C. § 2201(a), that is "ripe" for judicial review. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 n. 7 (2007).

To determine whether a declaratory-judgment action is "ripe," the Court must determine whether the action is "fit for judicial decision" and whether "'withholding court consideration' will cause hardship to the parties." *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017) (citation omitted). To satisfy this standard, the petitioner's injury must be "certainly impending." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.,* 274 F.3d 377, 399 (6th Cir. 2001) (citation omitted). Specifically, the declaratory judgment must

"concern a dispute that is likely to come to pass[.]" *OverDrive Inc. v. Open E-Book F.*, 986 F.3d 954, 957–58 (6th Cir. 2021) (cleaned up). The petitioner's injury may not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted).

Stovall's Complaint never alleges that Pearson has even hinted at suing her for copyright infringement, which renders any declaratory judgment action to defend such a suit unripe. *Compare Jones v. Glad Music Publ'g & Recording LP*, 535 F. Supp. 3d 723, 733 (M.D. Tenn. 2021) ("[T]he defendants have not threatened the plaintiffs with [infringement] litigation, nor does the Complaint contain allegations suggesting that the plaintiffs have engaged in conduct that brings them into conflict with the defendants[.]"), *with Severe Recs.,* 658 F.3d at 582 (claim was ripe because "Defendants persisted in accusing Sevier of copyright infringement," including sending numerous cease and desist letters).

Courts routinely reject such purely academic declarations of "fair use" or non-infringement under the Copyright Act where there are no allegations that an infringement suit has been threatened or is otherwise impending.[6]

---

[6] *See, e.g.*, *Handshoe v. Perret*, 270 F. Supp. 3d 915, 932–33 (S.D. Miss. 2017) (holding claim for declaration of "fair use" did not establish justiciable controversy); *State of Tex. v. W. Pub. Co.*, 681 F. Supp. 1228, 1231 (W.D. Tex. 1988), *aff'd*, 882 F.2d 171 (5th Cir. 1989) ("[T]he fact that someone claims a

Indeed, Stovall's own allegation forecloses the possibility that she is facing "certainly impending" copyright infringement liability, as JCPS has taken that risk off the table by withholding Pearson's copyrighted Surveys. The same is true of her asserted need to adjudicate JCPS's potential infringement liability to Pearson: there is no imminent threat of such litigation, because JCPS has not copied or distributed the Survey. This again confirms that the purpose of Stovall's suit is not to defend a coercive federal law claim, but instead to affirmatively exercise Stovall's rights under state law to obtain access to public records.

Moreover, Pearson has not made any actual use of Pearson's Survey at this point. Here, all we have are Stovall's vague assertions about her future intentions for using the Survey. That is not enough to definitively adjudicate whether she would be liable for infringement if she received copies of the Survey, because it is impossible to know whether her eventual use will diverge somehow from her stated intentions or whether there are material details about her intended use that

_____

copyright in certain material does not, standing alone, create a right to challenge it and thereby create a justiciable controversy."); *Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F. Supp. 2d 1080, 1085 (N.D. Cal. 2012) ("Amaretto faces no serious prospect of copyright infringement liability regarding the '661 Copyright, and so it lacks standing to seek a declaratory judgment . . . ."); *Hayden v. 2K Games, Inc.*, 375 F. Supp. 3d 823, 829–30 (N.D. Ohio 2019) (finding no justiciable controversy because "Take-Two has not asserted copyright claims against Hayden. Further, Hayden has not alleged that Take-Two has in any way threatened Hayden with a lawsuit for infringement.").

are omitted from her allegations. *Cf. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023) ("The fair use provision . . . requires an analysis of the specific 'use' of a copyrighted work that is alleged to be 'an infringement.' The same copying may be fair when used for one purpose but not another."); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) ("[E]ach case raising the question must be decided on its own facts." (citation omitted)).

Ultimately, a declaratory judgment may not merely "advis[e] what the law would be upon a hypothetical state of facts." *MedImmune, Inc.*, 549 U.S. at 127 (citation omitted). Putting aside her unfounded fear of copyright infringement liability, "advice" is precisely what Stovall seeks. Stovall's sweeping and abstract declaration makes clear that she is seeking an advisory opinion to protect her right to request Pearson's copyrighted materials for her "parental rights" organization going forward. (*E.g.*, DN 1, Page ID# 3, Compl. ¶ 14; *Id.*, Page ID# 7, Compl. Relief Request at 7, ¶ A).

Thus, even if Stovall's Complaint identified a "hypothetical coercive" suit that arose under Copyright Act (which it does not), her claim is still unripe. An "unripe claim[] raise[s] a jurisdictional issue, meaning that 'federal courts lack subject matter jurisdiction and the complaint must be dismissed.'" *Doe v. Oberlin*

*Coll.*, 60 F.4th 345, 355 (6th Cir. 2023) (citation omitted). The Court may affirm the District Court on this basis as well.

## IV. The District Court did not abuse its discretion by declining to exercise jurisdiction.

Also, even if Stovall's suit could satisfy the minimum requirements to state a justiciable claim arising under federal law, this Court should still affirm the District Court's reasonable exercise of its discretion under the Declaratory Judgment Act to decline jurisdiction. The District Court correctly recognized that Stovall's declaration would not fully resolve the controversy or meaningfully clarify the parties' legal relations, given that Kentucky law does not consider a requester's "fair use" to be relevant to application of KORA's exemptions and that Stovall's ORR could ultimately be denied under a different state-law exclusion. Nor is there any doubt that entertaining her federal declaratory judgment claim would intrude upon Kentucky courts' exclusive jurisdiction to adjudicate KORA claims. Indeed, allowing declarations like Stovall's to proceed would effectively enlist the federal judiciary as a special master for state courts and federalize all open records appeals whenever a denial in any way implicates a federal-law issue. The District Court's decision to eschew that path was not an abuse of discretion.

The exercise of jurisdiction under the Declaratory Judgment Act is never mandatory. *See* pp. 12-13, *supra*. The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the

litigant." *Cardinal Health, Inc.*, 29 F.4th at 796 (quotation omitted). Thus, even

when federal jurisdiction exists, if the complaint seeks only declaratory relief, the

district court retains discretion whether to exercise that jurisdiction considering the

purposes of the Act. *Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 457 (6th Cir.

2021) ("***Once a court is satisfied that the jurisdictional prerequisites are met***, it

considers five factors . . . ." (emphasis added)).

When determining whether to exercise jurisdiction over a declaratory relief

claim, a district court considers the factors set forth by this Court in *Grand Trunk*:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

746 F.2d at 326.

In making this discretionary determination, no single factor is dispositive,

and the relative weight of each factor "will depend on facts of the case." *W. World*

*Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). Moreover, this Court has

instructed district courts to proceed with caution in exercising jurisdiction.

*Cardinal Health, Inc.*, 29 F.4th at 796 (citation omitted). While a district court

rarely abuses its discretion by ***declining*** jurisdiction, *id.* at 801, a lower court may

easily do so by improperly ***accepting*** jurisdiction, *AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004).

Stovall has not shown, and cannot show, the District Court abused its discretion under these standards.

### A.    The Copyright Act's exclusive jurisdiction provisions do not alter district courts' discretion under the Declaratory Judgment Act.

Initially, there is no merit to Stovall's argument that district courts lack discretion to decline jurisdiction over declaratory judgment claims when the federal-law issue relates to a claim that is subject to exclusive federal jurisdiction, like claims arising under the Copyright Act.

First, Stovall's argument misunderstands the basis for discretion under the Declaratory Judgment Act. Discretion under the Act is not based solely on deference to an alternate forum, as is the case with doctrines like *Colorado River*[7] abstention, but on the unique nature of a declaratory judgment action, which anticipates a claim to prevent a future injury rather than adjudicating a coercive claim for an injury that has already occurred. *Wilton*, 515 U.S. at 277. Moreover, the plain language of the Declaratory Judgment Act expressly makes the exercise of jurisdiction discretionary, providing that courts "may" enter declaratory judgments. 28 U.S.C. § 2201(a). Not surprisingly, the cases on which Stovall relies

---

[7] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

for her argument primarily involve *Colorado River* abstention, not the discretionary factors relevant to exercising jurisdiction under *Grand Trunk* and *Wilton*. *See* App. Br. at 21 (collecting cases).

However, the Supreme Court has recognized that the "[d]istinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with ***greater discretion*** in declaratory judgment actions ***than that permitted under*** the 'exceptional circumstances' test of ***Colorado River***[.]" *Wilton*, 515 U.S. at 286 (emphasis added).

Therefore, this Court has recognized that, unlike *Colorado River* abstention, a district court may decline jurisdiction under the DJA even in the absence of any parallel state proceeding. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 398 (6th Cir. 2019) ("Under *Wilton*, we see no reason to harden the first *Grand Trunk* factor into a rule for such cases."). *See also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 436 (6th Cir. 2001) ("We reject plaintiffs' position that de novo review is still appropriate in cases where no parallel state proceeding exists. Since *Wilton*, we have applied the abuse of discretion standard in all cases . . . .").

Similarly, the Supreme Court has acknowledged that district courts retain discretion under the DJA, even for disputes that relate to areas of exclusive federal jurisdiction. *E.g.*, *MedImmune, Inc.*, 549 U.S. at 136 (holding that a licensee's

37

exclusive-jurisdiction, patent-invalidation declaration presented an "actual controversy" and remanding for lower court to apply *Wilton–Brillhart* discretionary factors).

Stovall's claim that she is left "without a remedy" is a red herring. She is certainly not deprived of a remedy to assert her "fair use" as a defense to a coercive federal-law infringement claim that might be actually brought against her in the future. If such a claim were imminent or actually brought, she could raise the defense at that time. At most, the District Court deprived her of a right to pursue an anticipatory remedy at this particular time, but again, the DJA does not guarantee anyone a right to an advance declaratory judgment. *Wilton*, 515 U.S. at 286.

Regardless, none of that is what this case is really about. The "remedy" Stovall is concerned with is her right under *state law*—specifically KORA—to obtain copies of public records. Neither *Grand Trunk* nor *Colorado River* is concerned with preserving access to remedies for rights arising solely under state law. Those are for state legislatures and state courts to protect. Stovall may be dissatisfied with the scope of the state-law rights and remedies that Kentucky has provided her, but that is not a concern that bears on federal courts' discretion to consider a declaratory judgment action regarding questions of federal law.

Moreover, to the extent vindication of Stovall's state-law rights might require some consideration of federal copyright law by state courts, exclusive

federal jurisdiction over claims "arising under" the Copyright Act would not impair her state-law remedies. Exclusive federal jurisdiction over copyright claims does not prevent state courts from undertaking *any* consideration of issues related federal copyright law, only from adjudicating claims that are created by the Copyright Act or necessarily raise substantial federal questions as an element of the claim, which Stovall's state-law KORA claims do not. *Gunn*, 568 U.S. 251 (need to resolve patent-law issues to establish case-within-a-case for state malpractice claim did not invoke exclusive federal jurisdiction); *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964) (Friendly, J.) ("[A]n action arises under the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act."); *Kunz v. Aoki*, 2021 WL 4860762, at *2-3 (E.D. Cal. Oct. 19, 2021) (need to consider merits of federal copyright claim to adjudicate state malicious prosecution claim did not invoke exclusive federal jurisdiction).

Thus, even if KORA's exclusive appellate review scheme did not constitute a "parallel state proceeding" for resolving Stovall's claims (which it does), the District Court still possessed discretion to decline jurisdiction under the DJA. And the District Court reasonably exercised that discretion in light of the Sixth Circuit's *Grand Trunk* factors.

**B.** **The District Court correctly held that the first two *Grand Trunk* factors supported declining jurisdiction.**

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk W. R.R. Co.*, 746 F.2d at 326. District courts generally consider these two factors together because "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008).

Here, the District Court correctly determined that Stovall's requested declaration would not settle the controversy or clarify the parties' legal relations, insofar as it would not fully resolve her state open records claim or ensure she receives a copy of the Survey. The only real-world controversy presented by Stovall's declaration is the success of her ORR. Stovall claims, "[w]ith a favorable ruling, ***Mrs. Stovall would be free to return to JCPS and repeat her request for the survey***, knowing that JCPS cannot refuse to provide them based on a mistaken understanding of federal copyright law. ***That is the whole scope of the present controversy.***" (App. Br. at 26 (emphases added)).

But, initially, a declaratory judgment concerning her intended "fair use" of the Survey would ***not*** resolve her open records claim, because Kentucky law does not consider a requester's purported fair use when applying the exemption under

KRS 61.878(1)(k), or any other exemption. As a matter of state law, Kentucky

(like many other states)[8] does not consider the requestor's purpose or intended use

in determining whether a record must be produced under KORA. As Kentucky's

Attorney General has noted, "[a] person's 'use' of a copyrighted work is separate

and distinct from how he acquires a copy of the work in the first place." *See* Ky.

Op. Att'y Gen. 09-ORD-079 (2009) at *6. For purposes of KORA's exemption,

"the fact that [a petitioner] may intend to make 'fair use' of [a record] once [s]he

obtains a copy does not give the [agency] any right to distribute copies to h[er]."

*Id*.

As the Missouri Court of Appeals explained in a case involving this same

issue:

> [T]he fair use doctrine does not work in the context of Sunshine Law
> requests. A Sunshine Law request is made and must be responded to
> before the actual use of the requested record occurs. . . . [I]t would be
> untenable as a legal and practical matter to interpret the Sunshine Law
> to require a custodian of records to make a fact intensive decision on a
> mixed question of law and fact regarding future use when the
> custodian has no information about the use and no means to get more
> information.

*Nat'l Council for Tchrs. Quality, Inc.*, 446 S.W.3d at 730.

---

[8] *See, e.g.*, *Nat'l Council for Tchrs. Quality, Inc.*, 446 S.W.3d at 730; *Pictometry Int'l Corp. v. Freedom of Info. Comm'n*, 59 A.3d 172, 192 (Conn. 2013); *Ali v. Philadelphia City Plan. Comm'n*, 125 A.3d 92, 104–05 (Pa. Commw. Ct. 2015).

Thus, it is likely Kentucky courts would not even consider a declaration regarding Stovall's fair use when resolving a state open records' appeal. And that is Kentucky's right. Kentucky state law, and Kentucky state law alone, creates Stovall's right to procure copies of public records, and Kentucky law defines the exceptions to that right. If Kentucky law dictates that certain aspects of copyright law will be considered when applying a state-law exception, and others will not, there is no basis for federal courts to question that choice.

Equally important, even if Stovall's declaration could resolve the applicability of the "prohibited by federal law" exception in KRS 61.878(1)(k), either JCPS or a reviewing Kentucky court could rely on other exceptions or grounds for denying her ORR that would not be resolved by Stovall's requested declaration. Under KORA, if Stovall were to return to state court to appeal a subsequent denial, Pearson could intervene and both Pearson *and* JCPS could assert other exemptions, beyond KRS 61.878(1)(k). *See Lawson v. Off. of Atty. Gen.*, 415 S.W.3d 59, 66 (Ky. 2013); *Edmondson v. Alig*, 926 S.W.2d 856, 859 (Ky. App. 1996) ("It is the substance of the material sought to be discovered that will determine the propriety of the court's order," not the adequacy of the agency's initial response).

Indeed, while criticizing JCPS's reliance on KORA's "prohibited by federal law" exemption, the *amici* parties identify another potential exemption that could

defeat Stovall's ORR: KRS 61.878(1)(c)(1), which exempts certain "confidential or proprietary" records that "would permit an unfair commercial advantage to competitors." *See* Amici Br. at 13 (suggesting that FOIA Exemption 4 and its KORA corollary, KRS 61.878(1)(c)(1), is the more appropriate basis for analyzing copyright-based exemptions from disclosure). Notably, one of the primary authorities relied upon by *amici*, *Naumes v. Dep't of the Army*, 588 F. Supp. 3d 23 (D.D.C. 2022), strongly suggests that such an exception would be a valid basis for excluding copyrighted materials. *Id*. at 40 ("There is no reason … that a party should be able to use FOIA as an end run around the protections afforded by copyright to access information it would otherwise have to pay for . . . .").

Stovall acknowledges that her declaration might not fully resolve her KORA claim. She nevertheless contends that "resolution of a discrete lesser federal controversy is appropriate, even when it might not fully end the greater controversy," and that even if her declaration might not fully resolve her entitlement to copies of the Survey under KORA, this "greater dispute can be resolved only if a federal court first resolves this lesser controversy of federal copyright law." (App. Br. at 27).

But Stovall is simply incorrect that a Kentucky court *must* resolve the issues presented by her declaratory claim before it can resolve the greater controversy. As explained above, a declaration of Stovall's "fair use" likely would not even be

relevant under Kentucky law to application of KRS 61.878(1)(k). And, even if it was, a Kentucky court could simply resolve her claim on the basis of another exemption without even considering KRS 61.878(1)(k). In either case, a declaration definitively resolving either party's "hypothetical" copyright-infringement liability under the fair use doctrine would be meaningless.

No matter how Stovall recharacterizes her Complaint, her declaration would not settle any real controversy. Stovall's need to resolve the application of the fair use doctrine to Pearson's copyright is entirely contrived. The District Court did not abuse its discretion in concluding these two factors weighed against exercising jurisdiction.

## C. The District Court did not abuse its discretion in concluding the third *Grand Trunk* factor weighed against exercising jurisdiction.

Under the third *Grand Trunk* factor, the Court considers "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*." *Grand Trunk W. R.R. Co.*, 746 F.2d at 326 (cleaned up). This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale Ins. Co.*, 513 F.3d at 558 (citation omitted).

Stovall contends the District Court abused its discretion by finding against jurisdiction under this factor because the "natural plaintiff" of Stovall's fair-use

defense is allegedly Pearson, through its hypothetical copyright-infringement suit.

(App. Br. at 28). She argues that the District Court lacked any basis for concluding

that she had filed her declaration "for the purpose" of avoiding a state forum

because, while Pearson "does have an available coercive action against Mrs.

Stovall," it is "not one that could be brought in state court." (*Id.* at 28–29). Again,

the District Court reasonably rejected Stovall's recharacterization of her Complaint

as one anticipating a hypothetical copyright infringement lawsuit rather than an

appeal under KORA. And from that perspective, the District Court reasonably

found that Stovall was not only the "declaratory plaintiff" but also the "natural

plaintiff" of her delayed appeal.

Nonetheless, regardless of which way Stovall characterizes the "natural

plaintiff" in this action, the District Court correctly found that Stovall's declaration

resulted in "procedural fencing" because Stovall is "attempting to get a favorable

decision in federal court prior to filing an open records appeal in Kentucky state

court." (DN 23, Page ID# 143, Memo. Op. Order at 6).

To conclude that a declaration serves as a method of procedural fencing, a

district court need not "impute an improper motive." *Scottsdale Ins. Co.*, 513 F.3d

at 558. The Sixth Circuit has rejected adopting any such "per se rule." *Cardinal

Health, Inc.*, 29 F.4th at 797. It must only be "apparent that plaintiff was trying to

secure a favorable ruling in federal court rather than take the risk of an unfavorable

one in state court." *Scottsdale Ins. Co.*, 513 F.3d at 558 (citation omitted). Stovall is undisputedly seeking a federal declaration based on her belief—whether or not it is correct—that it will preclude a Kentucky state court from determining whether KRS 61.878(1)(k)'s exception applies to her request. (*See* App. Br. at 30; DN 1, Page ID# 6, Compl. ¶ 41; DN 14, Page ID# 85, Pl.'s Resp. at 8). Improper motive or not, Stovall filed her declaration to fence off a Kentucky court.

Stovall's attempt to invalidate JCPS's exemption through this declaration also contravenes the Declaratory Judgment Act's purpose of "efficiency, fairness, and federalism." *W. World Ins. Co.*, 773 F.3d at 759. Rather than appeal JCPS's denial under KORA or wait for a live dispute over her liability under the Copyright Act, Stovall leveraged her ORR to acquire a federal-court judgment for a potential, future appeal in Kentucky court. The District Court reasonably determined that this factor weighed against jurisdiction. *Cf.* 10B FED. PRAC. & PROC. CIV. § 2758 (4th ed.) ("[I]t is not the function of the federal declaratory action merely to anticipate a defense that otherwise could be presented in a state action." (collecting cases)).

## D. The District Court properly concluded the need to avoid unnecessary federal/state friction weighed against exercising jurisdiction.

Under the fourth *Grand Trunk* factor, the Court asks, "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction[.]" *Grand Trunk W. R.R. Co.*, 746 F.2d

at 326. This factor looks at, among other issues, "which court, federal or state, is in a better position to resolve the issues in the declaratory action," and "whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Scottsdale Ins. Co.*, 513 F.3d at 560–61. The District Court reasonably concluded this factor weighed against exercising jurisdiction, as it would interfere with Kentucky courts' exclusive jurisdiction over state open records disputes.

KORA embodies Kentucky's policy concerning which public records a resident has the privilege to receive. *See* KRS 61.871; *Ky. Bd. of Examiners of Psychologists & Div. of Occupations & Pros., Dep't for Admin. v. Courier-J. & Louisville Times Co.,* 826 S.W.2d 324, 328 (Ky. 1992) ("The public's 'right to know' under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions.").

KORA has established the exclusive remedy for vindicating that policy, regardless of which exemption is invoked. Federal courts have no jurisdiction to direct the handling of state open records requests, to any extent.[9] Thus, this Court

_____

[9] *E.g.*, *Wombles v. Cabinet for Health & Fam. Servs.*, No. CIV A 08-CV-159-WOB, 2008 WL 4443019, at *3 (E.D. Ky. Sept. 26, 2008) ("To the extent that Wombles seeks an Order from this Court requiring the CHFS to comply with [KORA], this Court cannot assist him. . . . Federal Courts have no general power to compel action by state officers, including state judicial officers."); *Rogers v. Ezell*, No. 518CV00091TBRLLK, 2019 WL 1262752, at *2 (W.D. Ky. Mar. 19, 2019)

has long recognized that "Kentucky courts are in the better position to apply and interpret its law," which includes KORA and its exemptions. *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007).

Stovall contends that the District Court abused its discretion under this factor because "the fourth *Grand Trunk* factor favors accepting jurisdiction and resolving a copyright case where it should be resolved—in federal court." (App. Br. at 31). Stovall might be correct if there was any "copyright case," but there is not. There is no real world copyright controversy between Pearson and Stovall, or Pearson and JCPS. JCPS denied Stovall's ORR; Stovall never appealed; and a Kentucky court never ordered JCPS to disclose Pearson's copyrighted Surveys. Without an actual copyright dispute, the only controversy remaining is Stovall's ORR under KORA. And the fact is, if the District Court grants Stovall the relief she seeks, then a federal court could well be deciding (implicitly or explicitly) which records are and are not exempted under KORA and thus *must* be disclosed absent any other exemption. Such a judgment would almost certainly "increase friction between our federal and state courts" and "encroach upon state jurisdiction." *Grand Trunk W. R.R. Co.*, 746 F.2d at 326. *See also Pennhurst State Sch. & Hosp. v. Halderman*,

_____

("[T]his Court may [not] order the Hopkinsville-Christian County ECC to produce records pursuant to a previous open records request."); *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023TBRLLK, 2018 WL 3572526, at *2 (W.D. Ky. July 25, 2018) (same).

465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

The brief of the *amici* parties illustrates that a significant motive underlying declaratory suits like this is to bypass perceived shortcomings in state legislatures' existing efforts to define the scope of exemptions to citizens' state-law rights to obtain public records. Indeed, *amici* emphasize that the primary focus of their efforts to address this issue has been to seek *legislative reform* in various *state legislatures*, and they laud at least one state's action to address these issues. (*Amici* Br. at 18-20).

State legislatures are, in fact, the correct fora to pursue the reform Stovall and the *amici* seek, not federal courts. If Kentucky legislators do not believe open records requests should be denied on the basis of copyright status alone, they can adopt legislation to say so. Stovall's arguments aside, it is not the province of federal courts to question whether Kentucky has adequately defined and protected the information-access rights it has adopted, just as it is not the province of federal courts to issue advisory opinions about how state courts and officials could better interpret a state-law exemption. *Cf.* Amicus Br. at 4 ("The Coalition's interest is in

securing clarity on an issue that the Kentucky Attorney General has unsuccessfully struggled with in his statutorily assigned quasi-adjudicative role for decades.").[10]

Thus, the District Court reasonably found this factor weighed against exercising jurisdiction as well.

### E. The District Court properly applied the final *Grand Trunk* factor.

Under the final *Grand Trunk* factor, the Court must determine "whether there is an alternative remedy which is better or more effective." *Grand Trunk W. R. Co.*, 746 F.2d at 326. Generally, "[c]ourts deny declaratory relief if an alternative remedy is better or more effective." *Id.* The District Court did not abuse its discretion by finding that KORA's appellate scheme remained Stovall's "better or more effective" remedy. Under KORA, Kentucky has not only created Stovall's *right* to receive public records, but Kentucky has provided the exclusive *remedy*

---

[10] Similarly, *amici's* argument that the Copyright Act is not a "withholding statute" for purposes of KORA's KRS 61.878(1)(k) exemption raises a question of state law, not federal law. *Amici* rely on an admittedly "sparse" body of case law regarding production of copyrighted materials under the Freedom of Information Act ("FOIA"), including whether the Copyright Act qualifies as a statute "exempt[ing] from disclosure" under the standards set forth in FOIA Exception 3, 5 U.S.C. § 552(b)(3). *Hooker v. U.S. Dep't of Health & Human Servs*., 887 F. Supp. 2d 40, 61 n.18 (D.D.C. 2012) (describing case law as "sparse"). But even this limited case law makes clear that the answer turns on interpretation of FOIA and its exemptions, as the statute governing access to public records. *Weisberg v. Dep't of Justice*, 631 F.2d 824, 827 n.14 (D.C. Cir. 1980). Likewise, the question of whether copyright protection triggers KORA's "prohibited by federal law" exemption turns on interpretation of the state statutory exemption, which is a matter of state law.

for vindicating that right. KRS 61.880(5)(b); 61.882(1)–(2); *Rogers*, 2019 WL 1262752, at \*2 ("[T]he statute authorizes Kentucky circuit courts, not federal district courts, to enforce actions regarding open records requests."). The District Court did not abuse its discretion in determining state law provided an adequate alternative remedy for whatever substantive access rights that state law grants here.

Stovall nevertheless contends that a Kentucky court cannot fully resolve her potential KORA appeal, because it would lack jurisdiction to resolve her fair use defense. But again, Kentucky law does not consider the requester's intended use when determining whether a record is subject to production. *See* pp. 40-42, *supra*.

Moreover, to the extent that a Kentucky court would need to address incidental issues of federal law to resolve Stovall's KORA claim, like the existence of a third-party's copyright or even her alleged fair use, that would not be impaired by federal courts' exclusive jurisdiction to adjudicate claims "arising under" the Copyright Act. *See* p. 16, *supra*. Again, this exclusive jurisdiction applies only to claims seeking remedies conferred by the Copyright Act, or causes of action necessarily raising a substantial federal question as an element of the claim. It does not preclude state courts from addressing any issues of copyright law that might be relevant to a state-law claim, or a defense thereto. *E.g.*, *Gunn*, 568 U.S. at 264 ("We have no reason to suppose that Congress … meant to bar from state courts legal malpractice claims simply because they require a resolution of a hypothetical

patent issue"); *Christianson*, 486 U.S. at 809. There is no reason to doubt state courts' competence to do so, if necessary. *Gunn*, 568 U.S. at 262; *CSXT, Inc. v. Pitz*, 883 F.2d 468, 472–73 (6th Cir. 1989) ("State courts, like federal courts, have a constitutional obligation . . . to uphold federal law. They have the ability to interpret federal statutes, however complex.").

Stovall's "right" to access Pearson's Surveys through an open records request is a matter of Kentucky law privilege. The scope of any exemption to a state-created right is an issue that state authorities are entrusted to resolve in the first instance. Under the final *Grand Trunk* factor, there is no presumption that "remedies available in state court would not adequately protect [the petitioner's] interests." *Bituminous Cas. Corp.*, 373 F.3d at 816. The District Court did not abuse its discretion by determining that KORA established the appropriate forum for resolving a Kentucky open records request.

In sum, whether or not the minimum requirements for federal jurisdiction exist here, the District Court did not abuse its discretion in declining to exercise the purely discretionary jurisdiction conferred by the Declaratory Judgment Act. Stovall does not even dispute that her requested declaration may well not fully resolve her KORA claim, and it cannot be denied that entertaining the suit would interject the federal court into a wholly state-created open records regime that is otherwise within the exclusive jurisdiction of state courts. Whatever quibbles

Stovall may have with how the District Court analyzed one or more of the *Grand Trunk* factors, it cannot reasonably be said that the District Court's decision was wholly outside the realm of reasonable choices within its discretion.

## CONCLUSION

The District Court correctly concluded that it lacked subject matter jurisdiction over Stovall's demand. Stovall's Complaint does not arise under federal law, and to the extent it does, her declaration is unripe. And even ignoring both jurisdictional defects, the District Court did not abuse its discretion by declining to exercise jurisdiction under the Declaratory Judgment Act. This Court should affirm the District Court's dismissal for lack of subject matter jurisdiction.

Respectfully submitted,

*/s/Jason P. Renzelmann*
Cory J. Skolnick
Jason P. Renzelmann
Samuel W. Wardle
J. Austin Hatfield
FROST BROWN TODD LLP
400 W. Market St., 32nd Floor
Louisville, KY 40202
(502) 589-5400
cskolnick@fbtlaw.com
jrenzelmann@fbtlaw.com
ahatfield@fbtlaw.com
swardle@fbtlaw.com

*Counsel for Appellee NCS Pearson, Inc. d/b/a Pearson VUE*

# CERTIFICATE OF COMPLIANCE

Counsel for Appellant certifies in accordance with Fed. R. App. P. 32(g) that this Brief for Appellee contains 12,817 words as calculated by the word count function of Microsoft Word.

*/s/Jason P. Renzelmann*
Cory J. Skolnick
Jason P. Renzelmann
Samuel W. Wardle
J. Austin Hatfield
FROST BROWN TODD LLP
400 W. Market St., 32nd Floor
Louisville, KY 40202
(502) 589-5400
cskolnick@fbtlaw.com
jrenzelmann@fbtlaw.com
ahatfield@fbtlaw.com
swardle@fbtlaw.com

*Counsel for Appellee NCS Pearson, Inc. d/b/a Pearson VUE*

## CERTIFICATE OF SERVICE

It is hereby certified that on July 11, 2025, the foregoing was electronically filed with the Clerk of the Court by using the Sixth Circuit Court of Appeals' ECF system, which will send a Notice of Docket Activity to all registered parties.

*/s/Jason P. Renzelmann*
*Counsel for Appellee*

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), 30(b), and 30(g)(1), the

Appellant designates the following relevant district court documents:

| RECORD ENTRY # | Description of Entry | PAGE ID# |
|---|---|---|
| 1 | Complaint | 1-8 |
| 12 | Motion to Dismiss | 54-71 |
| 14 | Plaintiff's Response to Motion to Dismiss | 78-99 |
| 15 | Reply in Support of Motion to Dismiss | 100-110 |
| 23 | Memorandum Opinion & Order | 138-144 |

0157896.0790549   4913-1576-7120